Jerome BROWN, Appellant,

v.

The STATE of Texas, State.

No. 2-81-102-CR.

Court of Appeals of Texas,
Fort Worth.

March 24, 1982.

Lee Ann Dauphinot, Fort Worth, for appellants.

Tim Curry, Dist. Atty., and C. Chris Marshall, Fort Worth, for appellees.

Before HUGHES, JORDAN and RICHARD L. BROWN, JJ.

### OPINION

JORDAN, Justice.

Appellant was convicted by a jury of burglary of a habitation and repetition; sentence was assessed by the jury at eighteen years confinement in the Texas Department of Corrections.

The appeal is on thirteen grounds of error. Because of our disposition of this case based on the first six grounds of error, our discussion will be limited primarily to those grounds.

Reversed and remanded for new trial.

The gravamen of the first six grounds of error concerns the somewhat sudden withdrawal of lead counsel for appellant, with the trial court's approval, in the middle of the trial. Appellant's trial was held on January 23 and 24, 1980. Long prior to trial appellant had retained the services of Layne Harwell, an experienced criminal attorney to represent him in this case. The night before the trial, Lee Ann Dauphinot, a young, inexperienced lawyer, asked Harwell if she could sit with him during the trial so that she could gain necessary experience. Harwell agreed and the trial commenced on January 23, 1980, with Harwell as lead attorney and Dauphinot assisting. Dauphinot had not worked on the case before it went to trial and had no hand in the preparation of appellant's defense.

Prior to this trial, Harwell had represented one Wallace Berry Guydon, a co-defendant with appellant, charged in the same burglary, who had pled guilty to the offense of burglary of a habitation and had been sentenced. This was known to Harwell, appellant's lead attorney, prior to and at the beginning of trial. After the State had presented two witnesses and the testimony on direct examination of a third witness, Harwell conferred with the judge in his chambers, without State's counsel, appellant's co-counsel or appellant himself being present. He apparently told the court, ex parte, that since the testimony in the case had begun, he had concluded that he had a conflict of interest because of his representation of the co-defendant, Guydon. He requested permission of the court to withdraw as counsel and this permission was granted.

■ The withdrawal by Harwell in the middle of the trial was strictly his own idea, and it was not suggested by or concurred in, prior to the withdrawal, by appellant. It is also interesting to note that, if in fact a conflict of interest then existed, and there is nothing in the record to show precisely what the purported conflict was, that the same conflict existed prior to trial and was not mentioned by Harwell. His other client, Guydon, a co-defendant with appellant, had already pled guilty and been sentenced. Ergo, if there was a conflict of interest, Harwell should not have started to trial representing appellant because an attorney with a conflict of interest involving his client cannot render effective assistance of counsel.

Lead counsel Harwell represented to the court in chambers that he had discussed this situation with co-counsel Dauphinot and she was prepared to take over the defense. Dauphinot, in her brief, disputes this and contends that neither she nor appellant was told anything of the withdrawal of Harwell until after the court had permitted his withdrawal. Harwell was directed by the court to turn over his file to co-counsel and to remain at the counsel table for the rest of the trial so as not to prejudice the defendant in the eyes of the jury by absenting himself from the courtroom. In her brief Dauphinot says that Harwell removed himself to the end of counsel table, with his file, sitting silently with arms folded for the remainder of the trial.

After Harwell withdrew as counsel, the trial proceeded and Dauphinot conducted the cross-examination of the witness, police officer Tommy Lee Wright, and continued to serve as appellant's only counsel for the rest of the trial, including the presentation of defense evidence and summation to the jury.

When the State rested its case and not before, the court read into the record a statement of the events leading up to the withdrawal of counsel Harwell, but not the reason therefore, explained the situation to appellant and co-counsel Dauphinot, and asked appellant if he was agreeable to continuing trial with Dauphinot as his only counsel. Appellant replied that he was, and co-counsel Dauphinot then asked for a recess till the following day so that she could confer with her client. The recess was granted, and on the following morning, the second and final day of trial, defendant himself orally moved for a continuance so that he could acquire counsel of his own choice. This request was denied by the

court because of appellant's agreement the preceding day to proceed with Dauphinot as his only counsel.

■ Appellant, in his first six grounds of error, argues in essence that the trial court's permitting Harwell to withdraw as lead counsel in the middle of the trial, prejudiced his rights under the due process clause of the Fifth and Fourteenth Amendments to the Federal Constitution by denying him both the right to choose his own counsel and the effective assistance of counsel. We agree for the reasons now stated.

It is contended in appellant's first ground of error that it was error for the court to consider and rule on lead counsel's motion to withdraw as counsel in the absence of defendant and without the consent of defendant. He contends that he has an absolute right to be present at all phases of the trial and that he should have been consulted before his retained counsel was permitted to withdraw and still remain at counsel table, separate and apart from appellant and co-counsel and not participating further in the trial. We agree in part with this contention. The defendant's right to be present at all important phases, of course, is a constitutional, as well as a statutory right. See V.A.C.C.P., art. 33.03, providing in part that in all prosecutions for felonies and misdemeanors where punishment or any part thereof is imprisonment defendant must be present.

It is important to keep in mind that Layne Harwell was appellant's only retained counsel, who had prepared his defense and who was to try his case. Co-counsel Dauphinot had joined the defense team only the night before trial, at her request, to gain experience. She had not previously assisted Harwell in the preparation of the case for trial, and there is no showing that she was at all familiar with the facts or the law of the case prior to the morning of January 23, 1980, when the case went to trial. Appellant did not retain Dauphinot at any time before Harwell's withdrawal, and only then when advised by the court that the trial would continue with Dauphinot as lead counsel.

■ Under these circumstances we think it was error for the trial court to hold the in-chambers hearing, without appellant present, and to thereafter permit Harwell to withdraw and later deny appellant's request for time to hire his own counsel.

■ We do not, of course, mean to say that it is every instance of a court hearing without the defendant being present that will cause reversal of a case. As said early on in *Cartwright v. State*, 96 Tex.Cr.R. 230, 259 S.W. 1085 (1924): "It is not everything that takes place in the absence of a defendant upon trial for which a reversal should be ordered. There must be either an actual showing of injury or a showing of facts from which injury might reasonably be inferred." See also *Mares v. State*, 571 S.W.2d 303 (Tex.Cr.App.1978).

We think that in this case, under the facts and circumstances related above, that injury, or at least facts from which injury is reasonably inferred, is indicated.

■ We think that under the facts here presented appellant was denied the right to select counsel of his own choice and was also deprived of the effective assistance of counsel. It is fundamental that an accused has the right to counsel, either of his own choice, or one appointed if he is indigent. See V.A.C.C.P., art. 26.04. This is a constitutional right granted defendants by both Federal and State Constitutions and one, the violation of which will cause reversal. The court cannot force "designated" counsel upon a defendant. Counsel must be either retained by the accused or *appointed* by the court. See *Smith v. State*, 513 S.W.2d 586 (Tex.Cr.App., 1974); *Williams·v. State*, 461 S.W.2d 630 (Tex.Cr.App.1971); *Ex Parte Bain*, 568 S.W.2d 356 (Tex.Cr.App. 1978); *Webb v. State*, 533 S.W.2d 780 (Tex. Cr.App.1976). But this right to select his own counsel must not be manipulated so as to obstruct orderly procedure in the courts and to interfere with the administration of justice. See *Ex Parte Bain, Webb, supra.* When the court here permitted the withdrawal of lead counsel, without knowledge or consent of appellant, and designated the

inexperienced and basically unprepared Dauphinot to continue as lead counsel, he erred. We hold that the action of the court in designating Dauphinot as counsel and the refusal on the next day of an oral motion for continuance so appellant could hire other counsel, was an abuse of discretion. It is true that no written motion for continuance was filed, as required by V.A.C.C.P., art. 29.03, and that a denial of continuance will be held to be error only when the trial court has abused his discretion. In this instance, however, we think the circumstances of the refusal were such as to be a denial of due process of law required by the Fifth and Fourteenth Amendments to the Federal Constitution. See *Gandy v. State of Alabama*, 569 F.2d 1318 (5th Cir., 1978).

■ We recognize that after lead counsel Harwell had been permitted to withdraw following the in-chambers ex parte hearing, and after co-counsel Dauphinot had cross-examined the remaining State's witnesses, that the court asked appellant if he understood that Harwell had withdrawn and if he would agree to continue with Dauphinot as his lawyer. Appellant said he would agree to this, but on the following morning, when he personally asked for a continuance, he explained to the court that Harwell had asked him to continue with Dauphinot and that he thought it was only for the remainder of that day. We do not think this was an informed consent by appellant. He should have been consulted before the withdrawal and a hearing held on whether his rights would be prejudiced by the sudden withdrawal of Harwell. The trial court should have advised him of his constitutional right to choose and retain his own counsel. Under the circumstances of this case, appellant did not intelligently and knowingly waive that important right.

It is also evident that the fact that Harwell, after he was allowed to withdraw from the case, sat at the other end of the counsel table, apparently with his file, impassive and silent, at the least must have looked rather strange to the jury, in view of the fact that before this, Harwell had done all the lawyering for appellant. The jury could well have taken that strange circumstance as some indication that something had happened to cause him to somehow lose faith and interest in the defense of his client.

We also hold that under the circumstances of this case, and considering this record as a whole, that appellant was deprived of his due process right of reasonably effective counsel to defend him. See *Fitzgerald v. Estelle*, 505 F.2d 1334 (Fifth Cir., 1975), cert. denied, 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675, where it was held that when a lawyer's ineffectiveness has rendered a trial fundamentally unfair, whether he be retained or appointed and whether his action or inaction was known or unknown to the State trial officials, a deprivation of Fourteenth Amendment Due Process results from the enforcement of the resultant judgment. It was said in this case that the standard of reasonably effective assistance of counsel covers a greater range of counsel errors than does fundamental fairness standards of the Due Process concept embodied in the Fourteenth Amendment to the Constitution of the United States of America.

■ The circumstances in which the State will be bound by retained counsel's failure to meet Sixth Amendment standards of effectiveness, when the resulting trial cannot be characterized as fundamentally unfair, must be assessed more strictly. To find State involvement in retained counsel's conduct, which is adjudged to be less than reasonably effective yet not so grossly deficient as to render the proceeding unfair, it must be shown that a reasonably attentive State official should have been aware of and could have corrected the conduct but failed to do so. Although *Fitzgerald* is a habeas corpus proceeding, we think its doctrine is applicable here.

While we have found no Texas case construing the right to effective counsel under the identical facts which exist here, the case of *Gandy v. State of Alabama*, 569 F.2d 1318 (5th Cir., 1978), is strikingly similar to this case. In *Gandy*, a case involving indictment of the defendant for rape of a minor girl, defendant's retained, experienced

counsel, on the day of trial, stated that on the day following he had to try a civil case in another county and that a jury had already been selected to try that case. Counsel, in a rather cavalier fashion, announced his intention to attend the civil trial the next day, then moved for a continuance of Gandy's rape case until the completion of the civil trial. This motion was denied and the court proceeded to trial with a partner of the original lawyer, who was totally unfamiliar with the case and totally unprepared. The partner had no connection with the case until the first day of trial. Trial proceeded, with defendant's originally retained lawyer absent after the first day, and resulted in conviction and a sentence of ten years. The court in *Gandy* held that the failure to grant a continuance under these circumstances was a denial of petitioner's due process.

The court in *Gandy*, quoting from *Chandler v. Fretag*, 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4 (Sup.Ct., 1954), said, "Regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified.... A necessary corollary is that a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth." From *United States ex rel. Carey v. Rundle*, 409 F.2d 1210, 1215, (3 Cir. 1969), was quoted this language: "Due process demands that the defendant be afforded a fair opportunity to obtain the assistance of counsel of his choice to prepare and conduct his defense. *The constitutional mandate is satisfied so long as the accused is afforded a fair or reasonable opportunity to obtain particular counsel, and so long as there is no arbitrary action prohibiting the effective use of such counsel.*"

The court in *Gandy* went on to hold that the right to counsel theme of the due process clause has at least four important variations: *the right to have counsel, the right to a minimal quality of counsel, the right to a reasonable opportunity to select and be represented by chosen counsel and the right to a preparation period sufficient to assure at least a minimal quality of counsel.*

▮ Some of the factors to be considered by the court in determining what is a fair or reasonable opportunity to select and be represented by chosen counsel are: (1) the length of the requested delay; (2) whether the lead counsel has an associate who is *adequately* prepared to try the case; (3) whether other continuances have been requested and granted; (4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; (5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; (6) whether there are other unique factors present.

▮ In the case sub judice, as in *Gandy*, we hold that the factors listed above, point to the fact that the trial court should have granted appellant's oral request for a continuance to allow him to obtain his own counsel.

Appellant's first five grounds of error are sustained. The sixth ground, which complains of the trial court's failure to declare a mistrial sua sponte, when he permitted Harwell to withdraw, is overruled. It would not have been proper or appropriate for the trial court to have declared a mistrial. Such action would have tainted a further trial with jeopardy.

▮ Grounds of error seven through eleven all complain of the admission into evidence of the appellant's "pen packet" as proof of his prior conviction for possession of heroin. We note that appellant, who testified, admitted that he had served a prison term for possession of heroin; therefor no prejudice is shown by the admission of the "pen packet". Moreover, we have reviewed all the contentions raised under these grounds and find no error with respect to any of them. Ground No. seven contends that the "pen packet" contains hearsay evidence because of a notation to the effect that appellant pled not guilty at time of arraignment, but decided to change his plea to guilty at the bottom of the judgment page of the "pen packet." This

was not the objection made at trial. At that time the objection was to unspecified hearsay generally, which is an insufficient objection. Any error in admission of this part of the packet is therefore waived. However, it is suggested that on retrial of this case that that notation be deleted.

The last two grounds of error, Nos. 12 and 13, raise insufficiency of the evidence to prove lack of consent of one of the owners for appellant to enter the house and to support the guilty verdict beyond a reasonable doubt. Our review of this record convinces us that there was more than sufficient evidence to sustain the jury findings on both matters.

Appellant's grounds of error Nos. seven through thirteen are overruled.

The judgment of the trial court is reversed and the cause remanded for further trial.