Jimmy Loyd MEAD, Appellant,

v.

The STATE of Texas, State.

No. 2–85–192–CR.

Court of Appeals of Texas,
Fort Worth.

Jan. 14, 1988.

On Rehearing Oct. 19, 1988.

**440**

Law Offices of Art Brender and Art Brender, Law Offices of Lee Ann Dauphinot and Lee Ann Dauphinot, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., and Chris Marshall and Betty Stanton, Asst. Crim. Dist. Attys., Fort Worth, for the State.

Before BURDOCK, SPURLOCK and HILL, JJ.

OPINION

HILL, Justice.

Jimmy Loyd Mead appeals his conviction by a jury for the offense of capital murder. At the punishment stage of the trial, the jury returned negative findings on the issues of the deliberateness and the future dangerousness of Mead. The court therefore sentenced Mead to life imprisonment in the Texas Department of Corrections. Mead presents eleven points of error.

We affirm.

In point of error number one, Mead complains of the trial court's failure to place the burden of proof on the State to disprove sudden passion, which he asserts to have been raised by the evidence.

■ An instruction on the offense of murder is fundamentally defective if, when the evidence raises the issue of the death being caused by the defendant under the immediate influence of sudden passion arising from an adequate cause, it failed to

properly place the burden of proof on the State to disprove the element of sudden passion. *Shanks v. State,* 710 S.W.2d 585, 586 (Tex.Crim.App.1986).

■ The charge in the instant case does not place the burden of proof on the State to disprove the element of sudden passion. Mead's objection to the pertinent portion of the charge was as follows:

1. Paragraph 3 of the charge listed the elements the jury was to find beyond a reasonable doubt before they could find Mead guilty of capital murder. The court did not include a finding that Mead was not acting under the immediate influence of sudden passion arising from an adequate cause in the list. Mead made no objection to the omission.

2. Paragraph 5 was the application paragraph for the offense of capital murder. Mead objected that paragraph 5 "does not correctly charge on burden of proof on all defensive issues ... does not set out a converse charge, fails inject to [sic] defensive issues...."

3. Paragraph 6 was the application paragraph for the offense of murder. Mead objected that paragraph 6 "does not correctly charge on the burden of proof on all defensive issues. [D]oes not set out a converse charge, fails to negate defensive issues...."

We do not find this objection to be sufficiently specific to preserve this error now complained of for review. *See Young v. State,* 422 S.W.2d 444, 445 (Tex.Crim.App. 1968).

■ In any event, we find error, if any, to be harmless beyond a reasonable doubt because Mead was not entitled to a charge on voluntary manslaughter. The evidence showed that Mead and a companion kidnapped an insurance company employee, Willie Straw, from the parking lot of his place of employment in downtown Fort Worth, Texas, in the late evening of February 12, 1979.

After kidnapping Mr. Straw, Mead and the companion proceeded to drive him, in his own truck, to a remote section of Tar-

rant County, where they left him bound and gagged.

In the early morning of February 13, 1979, Officer James Carpenter of the Crowley Police Department stopped Straw's pickup carrying Mead and his companion. According to Mead's statement, the officer had both of them seated in his patrol car while he radioed his dispatcher. Mead suddenly grabbed the officer's gun, and a struggle ensued in the patrol vehicle. Mead gained control of the officer's gun and ordered him out of the vehicle. The officer began to exit the vehicle but suddenly dived back into the vehicle. At that time Mead shot and killed the officer. Under similar facts, our Court of Criminal Appeals has held that the issue of voluntary manslaughter was not raised by the evidence, since such evidence did not show that the defendant killed the deceased under a sudden passion arising from an adequate cause. *See Bravo v. State,* 627 S.W. 2d 152 (Tex.Crim.App.1982). Since Mead was not entitled to a charge on voluntary manslaughter, we find that the court's error in failing to properly place the burden of proof as to the issue to be harmless beyond a reasonable doubt. We overrule point of error number one.

In points of error two through five, Mead contends that the trial court erred in denying him access to the deceased's employment and medical records.

Discovery in criminal proceedings is defined and controlled by article 39.14 of the Texas Code of Criminal Procedure, which provides that upon written notice showing good cause the trial court may order the production of:

> [A]ny designated documents, papers, written statement of the defendant, (except written statements of witnesses and except the work product of counsel in the case and their investigators and their notes or report), books, accounts, letters, photographs, objects or tangible things not privileged, which constitute or contain evidence material to any matter involved in the action and which are in the possession, custody or control of the State or any of its agencies.

TEX.CODE CRIM.PROC.ANN. art. 39.14 (Vernon 1979).

 This statute makes it clear that what is discoverable is within the discretion of the trial court. *Quinones v. State,* 592 S.W.2d 933, 940 (Tex.Crim.App.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). The trial court is required to permit discovery only if the evidence sought is material to the defense of the accused. *Id.* at 941. In determining materiality, the undisclosed evidence must be evaluated in the context of the entire record and there is error only if the undisclosed evidence creates a reasonable doubt that did not otherwise exist. *Id.* The mere possibility that an item of undisclosed information might have helped the defense or affected the outcome of the trial is insufficient to establish materiality. *Id.* This test is the same test utilized by the United States Supreme Court in determining whether there has been a violation of a defendant's due process rights to disclosure. *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976).

 The records which were excluded were to have been sealed and forwarded to this court under seal. Our examination of the record disclosed that the sealed records were lost. We abated the appeal and ordered that it be substituted in the trial court in accordance with rule 50(e) of the Texas Rules of Appellate Procedure. The same subpoenas were issued and all records in accordance with the subpoenas were produced. They were sealed and forwarded to this court. Mead was allowed to file a supplemental brief complaining of the procedure followed at the trial court, and we heard argument on the supplemental brief. We have examined those records and find that they contain no evidence which would create a reasonable doubt that did not otherwise exist. We overrule points of error two through five.

 In five supplemental points of error Mead complains of the correctness and adequacy of the substitution procedure. In the first three supplemental points of error, Mead complains that the trial court erred

by proceeding with the substitution procedure in his absence, in violation of his rights under article I, section 10 of the Texas Constitution, the sixth amendment to the Constitution of the United States of America, and article 33.03 of the Texas Code of Criminal Procedure.

We do not find that the procedure followed in Mead's absence violated his rights to due process. Mead was present at trial when the subpoenas were originally presented. His attorneys were present on both occasions. All questions were asked by the trial court. We have not been presented with any additional objections he would have made that his attorneys did not present in his behalf. The authorities cited by Mead include *White v. State,* 149 Tex. Cr.R. 419, 195 S.W.2d 141 (1946); *Riggal v. State,* 590 S.W.2d 460 (Tex.Crim.App.1979); and *Brown v. State,* 630 S.W.2d 876 (Tex. App.—Forth Worth 1982, no writ). Each relates to the absence of the defendant at an important phase of his trial, at a time when his presence is mandated by article 33.03 of the Texas Code of Criminal Procedure. Even if the trial court erred in proceeding in Mead's absence, not every hearing in the defendant's absence will cause reversal of a case. *Brown,* 630 S.W.2d at 879. There must be either an actual showing of injury or a showing of facts from which injury might reasonably be inferred. *Id.* In this case, there is no actual showing of injury nor are there facts from which injury might reasonably be inferred. We overrule supplemental points of error one through three.

■ In supplemental points of error four and five, Mead complains that he was denied due process because he was denied an adequate record on appeal. Although it is difficult to ascertain the exact nature of Mead's complaint, he appears to contend that the evidence is insufficient to show that the documents presented at the hearing held in accordance with our order to substitute the lost documents for the originals are the same records originally presented.

The record reflects that the records were obtained for this hearing the same way they were obtained originally—by subpoena directed to the custodian of the appropriate records. The records now before us were the records produced in accordance with substantially the same subpoena as was issued at the time of trial. The trial court, in his order of transmittal, states that "[t]he parties responded and brought with them their files. The Court satisfied itself that he had a duplicate of the file from each institution [sic] and had the custodian certify that the file brought in did constitute the complete file in possession of the involved institutions."

Although there might be technical flaws in procedure, we find that overall the trial court complied with our order and the requirements of rule 50 of the Texas Rules of Appellate Procedure in substituting lost documents.

■ Mead complains because every witness did not testify that the records substituted were the same as the originals. Each witness did testify that the records produced in substitution were all the records he or she had. Although the trial court generally did not permit the questioning of the witnesses at the hearing, there is no showing that any effort was made to present a bill of exception to procure for us any testimony that any witness might have had as to any changes which might have been made to the records from the time they were originally presented.

Mead specifically notes that no records were produced by the City of Alvarado, and asserts that the original sealed record contained records from Alvarado. The record does not reflect that there were ever any records from Alvarado originally in the sealed record.

■ Finally, Mead contends that rule 50(e) of the Texas Rules of Appellate Procedure requires that he agree to the substitution, which he does not do. He refers to the last sentence of the rule, which states, "[i]f the appellant has made a timely request for a statement of facts, but the court reporter's notes and records have been lost or destroyed without appellant's fault, the appellant is entitled to a new trial

unless the parties agree on a statement of facts." TEX.R.APP.P. 50(e). We have before us a statement of facts, that being the court reporter's transcription of the trial proceedings. The material substituted was a lost or destroyed portion of the record other than the statement of facts. Rule 50(e) provides that such a lost record may be substituted in the trial court and says nothing about the appellant's approval being required.

We overrule supplemental points of error four and five.

■ In point of error number six, Mead argues that the trial court erred in allowing the State access to his juvenile records from a boys home in which he lived as a child. As to this point of error Mead presents no reference to the record, no argument, no authorities, and no showing of harm. We overrule point of error number six.

■ Mead complains in point of error number seven that the trial court erred in refusing to permit him to impeach a State's witness, Sammy Wayne Baker, by showing that he was on felony probation at the time he gave a statement to police in regard to the death of Officer Carpenter.

Ordinarily a probated sentence may be used to impeach a witness only if the probation has not expired at the time of trial. TEX.CODE CRIM.PROC. art. 38.29, ch. 722, 1965 Tex.Gen.Laws 317, 471, *repealed by* Act of June 14, 1985, ch. 685, sec. 9(b)(2), 1985 Tex.Gen.Laws 2472, 2474 and TEX.R.CRIM.EVID., 701–02 S.W.2d XXIX, LXVI–LXVII, *see now* TEX.R.CRIM.EVID. 609(c); *see also Adams v. State,* 685 S.W. 2d 661, 669–70 (Tex.Crim.App.1985). Mead relies on the rule that evidence of pending charges is admissible under certain circumstances for the limited purpose of showing bias, prejudice, intent, and motive of the witness in testifying. *See Massengale v. State,* 653 S.W.2d 20 (Tex.Crim.App.1983). This rule does not apply here because Baker's probation had expired at the time of trial so that he had no pending criminal charge. We overrule point of error number seven.

■ In point of error number eight, Mead contends that the trial court erred in refusing to permit him to introduce, at the guilt/innocence stage of the trial, a videotaped statement of Robert Rowland, former acting Crowley Police Chief, in which he said that Mead had shown some remorse. The purpose for which the video tape was offered into evidence was to impeach Rowland's testimony. Rowland testified outside the jury's presence that he had told a television reporter that Mead had not shown remorse for what had happened. He further testified outside the jury's presence that Mead had said he was sorry that he had not left one of his victim's cars in good condition, but that otherwise he had shown no remorse. Mead offered this evidence to impeach Chief Rowland on the issue of remorse and as being relevant to his understanding of the warnings and the circumstances under which his statement to the police was given.

Mead does not refer us to any evidence which would indicate how any remorse that he might have felt affected his ability to make a knowing and voluntary statement concerning the offense. The statement by Chief Rowland which Mead sought to impeach with the videotape was itself excluded from evidence. Any error in not allowing the impeachment of excluded evidence is surely harmless beyond a reasonable doubt.

■ If in some way Mead's point of error could be construed as urging error as to the trial court's exclusion of Chief Rowland's testimony as well, we find no evidence of relevancy of Mead's remorse with respect to his statement concerning the offense. We further find that his remorse has no relevancy to the issue of guilt or innocence which was submitted to the jury. Since the evidence offered was not relevant to any issue, the issue of Mead's remorse was a collateral matter.

Mead's counsel cross-examined Rowland on this issue. The Court of Criminal Appeals has held that when a witness is cross-examined on a collateral matter, the cross-examining party may not then contradict the witness's answer. *Shipman v. State,*

604 S.W.2d 182, 183 (Tex.Crim.App.1980). We overrule point of error number eight.

Mead maintains in point of error number nine that the trial court erred by permitting the prosecution to exclude blacks from the jury, in violation of his rights to due process, a representative jury, and equal protection of the law, all as guaranteed by the sixth and fourteenth amendments to the United States Constitution and article I, sections 10 and 19 of the Texas Constitution. He relies on the opinion of the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in which the Court held that a defendant may question, on equal protection grounds, the exclusion of members of his race from the jury by the State through the use of its peremptory challenges, without the need for proving the systematic use of the challenge in other cases. Justice Powell, in the majority opinion, stated that in order for the defendant to prevail on this basis, he initially must show that he is a member of a recognizable racial group and that the prosecutor has exercised peremptory challenges to remove, from the venire, members of the defendant's race. *Id.*, 106 S.Ct. at 1723. Since Mead is white and his complaint relates to the prosecutor's peremptory challenge of black jurors, we find that he has not presented a prima facie case of a violation of his right of equal protection. Mead contends that he might raise the issue, even though he is white, citing *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed. 2d 83 (1972). His reliance is misplaced as to the equal protection issue, because in that case the Court held only that a white person has standing to complain of systematic exclusion by race in the selection of his grand jury or petit jury because such exclusion denies him due process of law. *Id.*, 407 U.S. at 504, 92 S.Ct. at 2169.

Mead does contend that he was denied due process of law and a representative jury by the prosecutor's peremptory strikes. We hold that Mead's right to a fair cross-section of the community is limited to the venire and may not be invoked to invalidate the use of peremptory challenges. *See Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 1764, 90 L.Ed.2d 137 (1986). We overrule point of error number nine.

In point of error number ten, Mead asserts that the trial court erred by violating his due process right to a fairly selected jury by failing to permit him to exercise challenges for cause or peremptory challenges after the State had exercised all of its peremptory challenges or challenges for cause.

Mead's point of error is confusing because the discussion relating to the point of error does not seem related to the point as phrased. None of the specific instances related by Mead involved situations in which he was not permitted to exercise challenges for cause or peremptory challenges after the State had exercised its peremptory challenge or challenge for cause as to a particular juror.

Instead, Mead's complaint appears to be directed to the fact that when the State challenged a juror for cause the trial court gave Mead's counsel the opportunity to attempt to rehabilitate the juror, but limited defense counsel at that point in time to questions specifically related to the challenge, rather than permitting the defense to pursue wide-ranging questions unrelated to the basis of the State's challenge. Mead appears to assert that such a procedure is unfair, and that the procedure is in conflict with Texas Code of Criminal Procedure article 35.13, which provides:

A juror in a capital case in which the state has made it known it will seek the death penalty, held to be qualified, shall be passed for acceptance or challenge first to the state and then to the defendant. Challenges to jurors are either peremptory or for cause.

TEX.CODE CRIM.PROC.ANN. art. 35.13 (Vernon Pamph.Supp.1988). As we have noted, Mead does not cite us to any instance in which he was forced to make a challenge for cause or a peremptory challenge prior to the State's acceptance or challenge of the juror. Consequently, he has shown no violation of article 35.13.

Mead complains that the trial court's limitation of his voir dire at the time the State presented a challenge for cause was unfair because without a full-range voir dire he would not know whether or not he wished to agree with the State's challenge.

At the time either the State or the defendant presents a challenge for cause, the only issue before the trial court is whether the juror should be removed from consideration for jury service in the case due to the reason stated in the challenge. It follows, therefore, that the trial court's limitation of voir dire at that point to questions related to the issue at hand was not unfair to the defendant. For example, if a juror is challenged for his inability to fully consider the range of punishment, it is of no matter to the trial court whether the opposing party wishes the juror to serve. The court's only interest is whether the juror will be able to fairly follow the law as it relates to the range of punishment. We hold that the limitation on voir dire questions in connection with a challenge for cause to questions which relate to the issue raised by the challenge is not a violation of due process rights as guaranteed by the United States and Texas Constitutions, nor is such a procedure in conflict with article 35.13 of the Texas Code of Criminal Procedure. We overrule point of error number ten.

█ In point of error number eleven, Mead presents us with the contention that the trial court erred, in violation of his rights under the sixth and fourteenth amendments of the United States Constitution and article I, sections 10, 15, and 19 of the Texas Constitution, by depriving him of due process, equal protection of the law, and of a trial by jury representative of his community by denying his challenges to the array. He contends that Tarrant County, by choosing its array from voter registration lists, draws the array systematically to dilute the representation of minorities and young people.

The Texas Court of Criminal Appeals, in the case of *Granviel v. State*, 552 S.W.2d 107, 120 (Tex.Crim.App.1976), *cert. denied*, 431 U.S. 933, 97 S.Ct. 2642, 53 L.Ed.2d 250 (1977), cited with approval the opinion of the Fifth Circuit Court of Appeals in *United States v. Dangler*, 422 F.2d 344, 345 (5th Cir.1970). In *Dangler*, the Fifth Circuit Court approved the use of voter registration lists as the sole source of names for jury duty unless it resulted in the systematic exclusion of a cognizable group or class of qualified citizens. The opinion also held that those who do not choose to register cannot be considered a cognizable group.

Mead presented evidence from two experts who testified that blacks, Hispanics, and young people ages 18 to 24 constitute distinctive groups in Tarrant County and that these groups are underrepresented in venires as selected from the voter registration list.

The record does not reflect a system which systematically excludes individuals from serving because they are black, Hispanic, or young. If anything, it shows that those whom the system systematically excludes from service are those who do not register to vote. Since those who do not register to vote are not a cognizable group or class, we hold that Mead has failed to show the systematic exclusion of a cognizable group or class of qualified citizens. *Id.; Granviel v. State*, 552 S.W.2d at 120.

We find the California case of *People v. Harris*, 36 Cal.3d 36, 58, 679 P.2d 433, 201 Cal.Rptr. 782 (1984), relied upon by Mead in support of his contention, to be inconsistent with the Texas and Fifth Circuit authority upon which we rely. We overrule point of error number eleven.

The judgment is affirmed.

### OPINION ON REHEARING

█ In his motion for rehearing, Mead pointed out that we erred in our original opinion when we stated that no material from the City of Alvarado was ever included in the sealed record which was lost. On re-examination of the record we determined that there was an indication in the record that material from Alvarado was received and was to have been included in that record. We again abated the appeal so that the court might reconstitute the

records from the City of Alvarado. At a hearing held for that purpose, the witnesses from the City of Alvarado arrived and testified that they had no personnel records on file for the deceased, that their records for the years in which the deceased was employed by them had been destroyed. In response to a request to produce certain other city records, such as city council minutes, which might make reference to the deceased, the witnesses produced certain additional records which have been sealed and made a part of the appellate record. We have examined that material and also find no error in failing to disclose such information to Mead.

In view of this development, we have re-examined Mead's brief on appeal and his motion for rehearing and determined that in neither does he set forth any basis for believing, given the facts of this case, that any exculpatory material or any material helpful to his defense could be found in the personnel record of the deceased officer. At trial, counsel testified that these matters would go into the issue of the provocation of the difficulty, the character of the deceased, and the issue of whether the deceased was a properly certified police officer.

■■■■ The doctrine of provocation of the difficulty is a limitation of a defendant's right of self defense, and is raised when:

1. Self defense is an issue;
2. There are facts in evidence that show that the deceased made the first attack on the defendant; and
3. The defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting injury upon the deceased.

*Matthews v. State,* 708 S.W.2d 835, 837–38 (Tex.Crim.App.1986). Under the facts of this case, self defense was not raised, and, if it had been, Mead was certainly not harmed by being unable to present facts showing a limitation on the right.

We cannot conceive of anything in a deceased officer's personnel file relating to the officer's character which, under the facts of this case, would have been admissible in this trial or which could have lead to evidence helpful to Mead.

■■■■ The evidence is undisputed that the deceased officer was a police officer for the City of Crowley. As a police officer for the City of Crowley, the deceased officer was a peace officer within the meaning of the capital murder statute, whether he was properly licensed or certified. *See* TEX. PENAL CODE ANN. secs. 19.03 (Vernon 1983) and 1.07(a)(25) (Vernon 1974) and TEX.CODE CRIM.PROC.ANN. art. 2.12(3) (Vernon 1983).

We overrule all points of error on rehearing, including supplemental points of error and overrule the motion for rehearing.