# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00266-CR

**Billy Keith Mims, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT
### NO. 5708, HONORABLE J. ALLAN GARRETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Billy Keith Mims of five counts of aggravated sexual assault of a child and four counts of indecency with a child by contact.[1] The jury assessed punishment at two years' imprisonment for each of the four indecency counts, five years' imprisonment for two of the aggravated-sexual-assault counts, and twenty-five years' imprisonment for each of the remaining three aggravated-sexual-assault counts. The district court rendered judgment on the verdicts and imposed sentences (with some running consecutively, others concurrently) extending a total of 33 years in duration. In five points of error on appeal, Mims asserts that the district court abused its discretion by: (1) denying his motion for continuance; (2) designating an improper outcry witness; (3) admitting into evidence exhibits containing statements and drawings made by each of the two victims during their counseling sessions; and (4) excluding expert testimony by a defense witness. We will affirm the judgments of conviction.

---

[1] *See* Tex. Penal Code §§ 21.11, 22.021.

## BACKGROUND

The issues presented in this appeal do not require a detailed recitation of the underlying facts. Briefly, the State alleged that Mims committed multiple acts of indecency with a child and aggravated sexual assault of a child against his two daughters—identified throughout the proceedings by the pseudonyms "Robbi" and "Angie." Evidence considered by the jury during trial included the testimony of Robbi, who was six years old at the time of trial; Angie, who was eight years old at the time of trial; Linda Harriss, a licensed professional counselor and registered nurse who was the designated outcry witness for each child; Amber Mims, the girls' mother; and several defense witnesses, including Karen Little, a nurse practitioner who had treated Robbi for unrelated issues prior to the child's outcry of abuse. Also admitted into evidence were "workbooks" completed by the girls during their counseling sessions with Harriss, in which they had made statements and drawn pictures relating to the allegations. Based on this and other evidence, the jury found Mims guilty of the charged offenses and assessed punishment as noted above. The district court rendered judgment on the jury's verdict and imposed sentence as indicated. After the district court denied Mims's motion for new trial, this appeal followed.

## ANALYSIS

### Motion for continuance

At the beginning of the fourth day of trial, Mims orally moved for a continuance, asserting that he needed more time to review the records of Linda Harriss, the counselor who had interviewed the children in the case. The district court denied the motion. In his first point of error, Mims asserts that the district court abused its discretion in doing so.

It is well established that an unsworn, oral motion for continuance preserves nothing for review.[2]  In his brief, Mims acknowledges that he failed to file a sworn, written motion for continuance but claims that the district court's denial in this case implicates a "due process" exception to the preservation requirement, which had been previously recognized by several intermediate appellate courts.[3]  However, the Court of Criminal Appeals has more recently held that no such exception exists.[4]  Accordingly, by failing to file a sworn, written motion for continuance in the court below, Mims failed to preserve his complaint for appeal.[5]  We overrule Mims's first point of error.

**Outcry witness**

Following a hearing outside the presence of the jury, the district court designated licensed professional counselor Linda Harriss as the "outcry witness" for both children and allowed

---

[2]  *See Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) ("Ultimately, an unsworn oral motion [for a continuance] preserves nothing for appeal."); *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009) ("[I]f a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal."); *see also* Tex. Code Crim. Proc. arts. 29.03 ("A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown, which cause shall be fully set forth in the motion."), 29.08 ("All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance.").

[3]  *See, e.g.*, *Munoz v. State*, 24 S.W.3d 427, 431 (Tex. App.—Corpus Christi 2000, no pet.); *Deaton v. State*, 948 S.W.2d 371, 374-75 (Tex. App.—Beaumont 1997, no pet.); *Petrick v. State*, 832 S.W.2d 767, 770-71 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd); *O'Rarden v. State*, 777 S.W.2d 455, 459-60 (Tex. App.—Dallas 1989, pet. ref'd); *Brown v. State*, 630 S.W.2d 876, 880 (Tex. App.—Fort Worth 1982, no pet.).

[4]  *See Anderson*, 301 S.W.3d at 279-80 ("The court of appeals in this case instituted a 'due process' exception to a rule of procedural default.  The broad and vague concept of due process, as invoked by the court of appeals, is amorphous.  And no such exception exists under our case law.").

[5]  *See Blackshear*, 385 S.W.3d at 591; *Anderson*, 301 S.W.3d at 279.

3

Harriss to testify to out-of-court statements that the children had made to her concerning the alleged offenses. Mims does not challenge the district court's designation of Harriss as the outcry witness for Angie. However, in his second point of error, Mims contends that the proper outcry witness for Robbi was the child's mother, Amber Mims (hereinafter referred to as "Amber").

Article 38.072 of the Texas Code of Criminal Procedure, also known as the outcry statute, creates a hearsay exception in the prosecution of certain sexual offenses against children for the admission of a child's first outcry of sexual abuse to an adult.[6] The outcry statute applies only to out-of-court statements that: (1) describe the alleged offense; (2) are made by the child; and (3) are made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.[7]

Prior to trial, the State provided notice of its intent to introduce hearsay statements made by Robbi under the outcry statute.[8] The notice stated that Robbi had "made a statement regarding the facts and circumstances of the offense to [Amber]" but had "made further, more detailed statements regarding the facts and circumstances of the offense to her counselor, Linda Harriss." Attached to the notice were handwritten statements by Amber, as well as a summary of the statements Robbi had made to Harriss and notes from Robbi's counseling sessions.

In Amber's statements, she explained that during a conversation with Robbi regarding "good and bad touches," she asked Robbi "if she had ever had a bad touch." Robbi responded, "My

---

[6] *See* Tex. Code Crim. Proc. art. 38.072; *Bays v. State*, 396 S.W.3d 580, 581 n.1 (Tex. Crim. App. 2013).

[7] Tex. Code Crim. Proc. art. 38.072, § 2(b)(1); *Bays*, 396 S.W.3d at 581 n.1.

[8] Tex. Code Crim. Proc. art. 38.072, § 2(b)(1) (party intending to offer outcry statement must provide adverse party with "a written summary of the statement" and "the name of the witness through whom it intends to offer the statement").

4

Daddy." Amber then asked Robbi how her father "had done a bad touch" and Robbi "spread her legs apart and motioned her hand up and down in front of her private continuously." Amber next asked Robbi whether her father "had used one, two, or three fingers," and the child answered "one." Amber further questioned Robbi regarding whether her father had "done anything else." According to Amber, Robbi responded as follows:

> [Robbi] whispered in my ear that he put his mouth on her private . . . and then she said out loud, "Then it dried." I asked her what he would tell her when he was doing this to her? She said, "Now be real still." I asked her if that was all he done to her, and she said he put his private in her mouth, and he made her touch it. I asked her how she touched it and she poked my leg with one finger. . . . I also asked her when it happened and she said "earlier."

Immediately thereafter, Amber continued to question Robbi about what had happened, but the child started to become "angry" and "didn't want to talk about it anymore." Amber then scheduled an appointment for Robbi to see Harriss, who had already been counseling the children for unrelated issues.

During her subsequent counseling sessions with Harriss, Robbi made several additional statements concerning the offenses. Harriss asked Robbi if her father had a "private," and she responded, "Yes, and it was hard." When Harriss asked Robbi "where her private was," the child "pointed to her genital area as she spread her legs." According to the evidence presented, Robbi told Harriss that Mims: (1) "made me touch his private"; (2) "touched my privates with his hand"; (3) "put his mouth on her private"; and (4) "put his private in her mouth." She also told Harriss that when her father made her touch his genitals, "it felt bad [and] hard" and that this incident had occurred in the bathroom. Regarding the allegations of oral contact, Robbi told Harriss that

5

when her father put his sexual organ in her mouth, "yucky stuff came out of his private and his private was hard" and "the stuff that came out went in my mouth and in my private." Robbi also told Harriss that when her father put his mouth on her sexual organ, "he bit her with his teeth and licked her private with his tongue." Robbi further explained that some of the abuse had occurred during the day when her grandparents were away and she was home alone with her father, that some of the abuse had occurred in her father's bedroom after "Daddy had locked the door," and that her father had said he would "whoop [her] ass" if she told anyone about what he was doing to her. Robbi also described an additional offense—Robbi told Harriss that her father had "rubbed his private on the outside of [her] private and on the side of [her] bottom."

In accordance with the outcry statute, the district court conducted a hearing outside the presence of the jury to determine whether Harriss or Amber was authorized to testify regarding Robbi's out-of-court statements.[9] While the State argued that the proper outcry witness was Harriss, because of the specific description of the offenses that Robbi had provided to Harriss, Mims asserted that the proper outcry witness was Amber, because she was the first adult to whom Robbi had made a statement concerning the offenses. At the conclusion of the hearing, the district court designated Harriss as the proper outcry witness and permitted her to testify to Robbi's out-of-court statements, summarized above.

A trial court has "broad discretion" in determining who qualifies as a proper outcry witness, and we review a trial court's designation of an outcry witness for abuse of discretion.[10] As with other evidentiary rulings, we will uphold the trial court's ruling if it is reasonably supported by

---

[9] *See* Tex. Code Crim. Proc. art. 38.072, § 2(b)(2).

[10] *Garcia v. State*, 792 S.W.2d 88, 91-92 (Tex. Crim. App. 1990); *Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd).

6

the record and within the zone of reasonable disagreement.[11] We will find an abuse of discretion

only when the trial court's ruling is outside the zone of reasonable disagreement.[12]

Although the outcry statute provides that the proper outcry witness is the "first" adult

to whom a child made a statement about the offense, the Court of Criminal Appeals has interpreted

that provision to mean the first adult "to whom the child makes a statement that in some discernible

manner describes the alleged offense."[13] "[T]he statement must be more than words that give a

'general allusion' that something in the area of sexual abuse was going on."[14] If the initial statement

to an adult conveyed nothing more than a "general allusion" of abuse, then the recipient of a

subsequent, detailed statement should be designated as the outcry witness, even though that person

technically was not the first adult to whom the child revealed the offense.[15] This requirement allows

the State to present outcry testimony that describes the charged offenses in a "discernable manner,"

even though the child may have previously made general allusions regarding the offense to another

---

[11] *See Garcia*, 792 S.W.2d at 92; *Polk v. State*, 367 S.W.3d 449, 452 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see also Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005) ("Article 38.072 is a rule of admissibility of hearsay evidence.").

[12] *See McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Polk*, 367 S.W.3d at 452.

[13] *See Garcia*, 792 S.W.2d at 90-91; *see also Michell v. State*, 381 S.W.3d 554, 558 (Tex. App.—Eastland 2012, no pet.).

[14] *Garcia*, 792 S.W.2d at 91; *see Michell*, 381 S.W.3d at 558.

[15] *See Garcia*, 792 S.W.2d at 91 (initial statement that "something happened at home, and that it had to do with abuse" was "general allusion," insufficient to designate first adult as outcry witness); *Thomas v. State*, 309 S.W.3d 576, 579 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd); *Sims v. State*, 12 S.W.3d 499, 500 (Tex. App.—Dallas 1999, pet. ref'd) (same); *see also Foreman v. State*, 995 S.W.2d 854, 858-59 (Tex. App.—Austin 1999, pet. ref'd) (collecting cases and observing that they "establish the difficulty that can arise in identifying the proper outcry witness, and the broad discretion of district courts in making this determination").

adult.[16]  Generally speaking, the proper outcry witness is the first adult to whom the complainant describes "how, when, and where" the abuse occurred.[17]

On this record, it would not be outside the zone of reasonable disagreement for the district court to find that Harriss, rather than Amber, was the first adult to whom Robbi described the offenses in a discernible manner.  Although Robbi told Amber that Mims had given her a "bad touch," and indicated with her hand that Mims had touched her genitals, the district court could have reasonably concluded that, without more information, this was merely a "general allusion" to an incident that might or might not have constituted the offense of indecency with a child, depending on the circumstances surrounding the "touch."[18]  As for the aggravated-sexual-assault charges stemming from the allegations of oral contact, although Robbi told Amber that Mims had put his mouth on her "private" and had put his "private" in her mouth, the district court could have reasonably concluded that Robbi failed to describe to Amber what she meant by the term "private" and that she also failed to describe "when" and "where" these incidents occurred, stating only that they had occurred "earlier."  Without more detail, it would not be outside the zone of reasonable disagreement for the district court to find that Robbi's statements to Amber were merely "general allusions that something in the area of sexual abuse was going on."[19]

---

[16]  *Garcia*, 792 S.W.2d at 91; *Sims*, 12 S.W.3d at 500.

[17]  *See Thomas*, 309 S.W.3d at 579; *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd); *Bargas v. State*, 252 S.W.3d 876, 894 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Sims*, 12 S.W.3d at 500.

[18]  *See Evans v. State*, 299 S.W.3d 138, 142 (Tex. Crim. App. 2009) (without element of intent, indecency with a child "could technically apply to even the most legitimate handling of a child, for example, a mother washing or bathing her own child").

[19]  *See Garcia*, 792 S.W.2d at 91.

8

On the other hand, the district court could have reasonably found that Robbi's statements to Harriss described in sufficient detail how, when, and where the abuse occurred. The record reflects that Robbi described for Harriss what she meant by the term "private," which, the district court could have reasonably concluded, was essential to identifying the precise nature of the alleged offenses. The district court could have further found that Robbi's statements to Harriss describing how Mims's sexual organ felt "hard" when she touched it demonstrated Mims's sexual intent, which is an essential element of the indecency offense.[20] Regarding the aggravated-sexual-assault charges involving oral contact, the district court could have reasonably found that Robbi did more than merely allude to the oral abuse that Mims had committed, in that she described to Harriss that her father had "licked" and "bit" her genitals and that "yucky stuff" from Mims's genitals "went in" her mouth and genitals. Moreover, Robbi's statements to Harriss referenced "when" and "where" the abuse had occurred, including in the bathroom on one occasion and during the day in her father's bedroom on other occasions when she was alone with Mims. The record further reflects that it was only during Robbi's counseling sessions with Harriss that she disclosed genital-to-genital contact with Mims. Thus, the district court also could have reasonably found that Harriss was the proper outcry witness for the charged offense of genital-to-genital contact.[21] We cannot conclude

---

[20] *See Garcia*, 792 S.W.2d at 90-91 (proper outcry witness is first adult to whom the child "in some discernable manner describes the offense").

[21] *See Polk*, 367 S.W.3d at 453; *Broderick*, 35 S.W.3d 67, 73 (Tex. App.—Texarkana 2000, pet. ref'd) ("Because of the way in which the statute is written, an outcry witness is not person-specific, but event-specific.").

9

on this record that the district court abused its discretion in finding that Robbi's statements to her mother were merely general allusions to abuse and that Harriss was the proper outcry witness.[22]

We overrule Mims's second point of error.

**Admissibility of exhibits**

During Harriss's testimony, the State offered into evidence "workbooks" that contained statements made and pictures drawn by Robbi and Angie during their counseling sessions with Harriss. Robbi's workbook, which was offered in its entirety, spanned several counseling sessions over a period of approximately nine months, while Angie's workbook, which was offered in the form of several individual entries completed by the child, spanned a period of two months. In a bench conference, Mims objected to the admission of Robbi's workbook, and later to Angie's workbook entries, on the ground of hearsay, arguing that the outcry statute did not contemplate the admission of multiple statements pertaining to the alleged offenses made over such an extended period of time.[23] In response, the State argued that the statements and pictures contained in the workbooks constituted "continuous outcries," which this Court and others have held to be

[22] *See, e.g.*, *Michell v. State*, 381 S.W.3d 554, 559-60 (Tex. App.—Eastland 2012, no pet.) (holding that child's statements to police that her "mom made her put her hands up in her," "her dad put his middle part up in her," her parents "touched her in her private areas" and that her "dad put his male parts inside of her" were general allusions to sexual abuse whereas child's statement to forensic interviewer provided the "how, when, and where" of the abuse; thus, trial court did not abuse its discretion designating forensic interviewer as outcry witness); *Sims*, 12 S.W.3d at 500 (counselor proper outcry witness where complainant told mother that defendant "had touched her private parts" but later told counselor how, when, and where appellant had touched her).

[23] Specifically, the record reflects that the State offered Robbi's workbook from her counseling sessions as a single exhibit consisting of thirty-three pages. Mims's counsel objected to the exhibit in its entirety as hearsay. The State later presented Angie's workbook pages, illustrations, and writings from her counseling sessions in nine different exhibits offered at the same time. Mims globally objected to the entire offer as hearsay, "for the reason previously stated," without referring to any specific statements or drawings contained within the exhibits.

10

admissible in certain cases where a child describes different details of the same incident of abuse over a period of time, usually (but not always) on separate dates.[24] Alternatively, the State argued that several of the drawings contained within the exhibits were admissible to show the children's "then-existing state of mind," which is another exception to the hearsay rule.[25] Mims replied that portions of the workbooks were "arguably" admissible under the outcry statute, but contended that other portions were not, asserting that when the alleged outcries "go on for months and months," the evidence goes "beyond the scope of what was intended" to be admitted pursuant to the outcry statute.[26] However, Mims did not identify for the district court which specific statements or drawings contained within the workbooks that he believed to be inadmissible pursuant to the outcry statute, instead maintaining his objection to the exhibits in their entirety. The district court overruled Mims's objection and admitted the exhibits. Harriss then proceeded to provide testimony explaining and summarizing the drawings and statements contained within the exhibits, over a

---

[24] *See Marquez v. State*, 165 S.W.3d 741, 747 (Tex. App.—San Antonio 2005, pet. ref'd) (outcry encompassed two statements made by child on different dates); *Zinger v. State*, 899 S.W.2d 423, 429–30 (Tex. App.—Austin 1995), *rev'd on other grounds*, 932 S.W.2d 511 (Tex. Crim. App. 1996) (outcry encompassed "one continuous story" told by child "over three days"); *Moon v. State*, 856 S.W.2d 276, 281 (Tex. App.—Fort Worth 1993, pet. ref'd) (outcry encompassed multiple statements "told over several weeks"); *Norris v. State*, 788 S.W.2d 65, 68-69 (Tex. App.—Dallas 1990, pet. ref'd) (outcry encompassed several statements made by child on same day); *see also Garza v. State*, No. 03-04-00508-CR, 2006 Tex. App. LEXIS 8308, at *5 (Tex. App.—Austin Sept. 21, 2006, pet. ref'd) (mem. op.) ("This Court has upheld the admission of multiple outcry statements, made over a period of time to the same witness, explaining that such statements make up a continuous story amounting to one, continuing outcry statement.").

[25] *See* Tex. R. Evid. 803(3). On appeal, the State argues for the first time that the workbooks would also be admissible pursuant to the medical-diagnosis exception to the hearsay rule. *See* Tex. R. Evid. 803(4); *see also Taylor v. State*, 268 S.W.3d 571, 590 (Tex. Crim. App. 2008) (summarizing requirements for medical-diagnosis exception to apply, including requirement that "truth-telling was a vital component of the particular course of therapy or treatment involved").

[26] Mims did not respond to the State's argument that some of the drawings within the exhibits were admissible to show the children's state of mind.

11

running objection by Mims. In his third point of error, Mims asserts that the district court abused its discretion in admitting Robbi's workbook. In his fourth point of error, Mims similarly asserts that the district court abused its discretion in admitting Angie's workbook entries.

Although not briefed by the parties, we must first address whether Mims properly preserved error, if any, in the court below.[27] We conclude that he did not. It is well established that when an exhibit contains both admissible and inadmissible material, the burden is on the objecting party to specifically point out which portion of the exhibit is inadmissible; otherwise, any error in admitting specific portions of the exhibit is not preserved for review.[28]

Here, the exhibits to which Mims objected contained over 40 pages of handwritten, printed, and illustrated material, including numerous statements and drawings made by the girls during the course of their months-long counseling sessions with Harriss. Our review of the exhibits reveals that they contained at least some evidence that the district court would not have abused its discretion in finding admissible. For example, according to Harriss, several of the statements and drawings within the workbooks reflected the girls' mental conditions or feelings, including drawings showing the girls crying, frowning, and smiling. Also, three of the workbook pages contained a printed outline of a human body, and Harriss testified that she instructed the girls to illustrate the outline using different colors to express how different portions of their bodies were feeling. Robbi

[27] *See Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009) (observing that "a court of appeals should review preservation of error on its own motion"); *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005) (stating that "preservation of error is a systemic requirement that must be reviewed by the courts of appeals regardless of whether the issue is raised by the parties").

[28] *See Whitaker v. State*, 286 S.W.3d 355, 369 (Tex. Crim. App. 2009); *Sonnier v. State*, 913 S.W.2d 511, 518 (Tex. Crim. App. 1995); *Human v. State*, 749 S.W.2d 832, 838 (Tex. Crim. App. 1988); *Brown v. State*, 692 S.W.2d 497, 501 (Tex. Crim. App. 1985); *Hernandez v. State*, 599 S.W.2d 614, 617 (Tex. Crim. App. 1980) (op. on reh'g).

colored the bottom half of her body blue to express that she was feeling "sad" in that portion of her body. Similarly, Angie colored her forehead red to indicate that she was feeling "angry" and colored her mouth and a portion of her lower body blue to indicate a feeling of sadness. It would not be outside the zone of reasonable disagreement for the district court to find that at least some of these drawings were admissible pursuant to the "then-existing state of mind" exception to the hearsay rule.[29]

Moreover, regardless of the merits of the State's theory that multiple statements made over a prolonged period of time may constitute a "continuous outcry," at least one of the statements contained within the exhibits was the *only* statement describing a particular offense. In Robbi's workbook, Robbi told Harriss that Mims "rubbed his private on the outside of my privates and on the side of my bottom." The workbook contained no further statements pertaining to the allegation of genital-to-genital contact between Mims and Robbi. For the reasons specified in our discussion of Mims's second point of error, it would not be outside the zone of reasonable disagreement for the district court to conclude that this particular statement was admissible pursuant to the outcry statute.[30] Similarly, Angie's workbook entries contained at least one statement relating to the offense of genital-to-mouth contact that the district court would not have abused its discretion in finding admissible pursuant to the outcry statute—the first statement made to Harriss describing

---

[29] *See* Tex. R. Evid. 803(3) (statement of declarant's then-existing state of mind or emotional, sensory, or physical condition not excluded by hearsay rule); *Martinez v. State*, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000); *Salazar v. State*, 127 S.W.3d 355, 363 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *see also Boyance v. State*, No. 01-10-00089-CR, 2010 Tex. App. LEXIS 9250, at *2-4 (Tex. App.—Houston [1st Dist.] Nov. 18, 2010, pet. ref'd) (mem. op., not designated for publication) (child's drawing of mother admissible as statement of child's then-existing state of mind).

[30] *See* Tex. Code Crim. Proc. art. 38.072.

13

that offense—even if subsequent statements pertaining to that same offense might have been inadmissible for the reasons asserted by Mims.

Because the exhibits contained at least some admissible evidence, Mims was required to identify for the district court which particular statements and drawings within the exhibits he considered inadmissible.[31]  He did not do so.[32]  Accordingly, Mims failed to preserve error, if any, in the court's admission of the exhibits.

We overrule Mims's third and fourth points of error.

---

[31] *See Whitaker*, 286 S.W.3d at 369 ("The trial court was not obligated to search through these [exhibits] and remove 'all of the inadmissible references so that the recorded statements only contained the admissible evidence.'"); *Sonnier*, 913 S.W.2d at 518 ("When an exhibit contains both admissible and inadmissible evidence, the objection must specifically refer to the challenged material to apprise the trial court of the exact objection."); *Hernandez*, 599 S.W.2d at 617 ("While it might be conceded that appellant's objection sufficiently stated grounds for the objection, it did not identify what was objected to."); *see also Barnes v. State*, 876 S.W.2d 316, 329 (Tex. Crim. App. 1994) ("The trial court was not required, in the face of a global hearsay objection, to cull through the [exhibit] and exclude whatever particular matters he may find there that meet that description."); *Moore v. State*, No. 14-09-00033-CR, 2009 Tex. App. LEXIS 9744, at *2-8 (Tex. App.—Houston [14th Dist.] Dec. 29, 2009, pet. ref'd) (mem. op., not designated for publication) (appellant objected to report of sexual assault nurse examiner in its entirety as hearsay; court concluded that appellant failed to preserve error by failing to "inform the trial court of the specific objectionable material" contained within report); *Cline v. State*, No. 03-07-0016-CR, 2008 Tex. App. LEXIS 2242, at *16-17 (Tex. App.—Austin Mar. 26, 2008, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant failed to preserve error regarding inadmissible statements contained within ten pages of medical records when objection was to medical records in their entirety).  *Cf. Jones v. State*, 843 S.W.2d 487, 492 (Tex. Crim. App. 1992), *overruled on other grounds by Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001) ("The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part.  If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection.").

[32] We note that Mims has similarly failed in his brief on appeal to identify the specific statements or drawings within the exhibits that he is challenging as inadmissible.  *See* Tex. R. App. P. 38.1(i).

**Exclusion of defense evidence**

During Mims's direct examination of Karen Little, a nurse practitioner who was familiar with the Mims family on both a personal and professional basis and who had treated Robbi for unrelated medical issues before the abuse allegations were made, the following occurred:

Q:        Given your life experience, both professional and personal, have you seen kids who believed in their heart of hearts that something happened when it really didn't happen?

A:        Yes, sir.

Q:        I'm sorry?

A:        Yes, sir.

Q:        And in those situations, how big of an influence is repetition in talking about this false event?

A:        It reinforces what they think they believe.

Q:        And as time passes, let's say two-plus years, has it been your experience that that reinforcement gets stronger?

[Prosecutor]:  Objection. Qualification of this witness.

[Mims]:        We already established her professional and life experiences in dealing with kids.

[Prosecutor]:  Not in this area, Your Honor.

The district court sustained the objection and Mims, without making an offer of proof, immediately passed the witness. In his fifth point of error, Mims asserts that the district court abused its discretion in not allowing Little to answer the question.

It is well established that in order to preserve error in the exclusion of evidence, the complaining party must comply with Rule of Evidence 103 by making an offer of proof that

15

sets forth the substance of the proffered evidence.[33]  "The offer of proof may consist of a concise statement by counsel, or it may be in question-and-answer form."[34]  "If in the form of a statement, the proffer 'must include a reasonably specific summary of the evidence offered and must state the relevance of the evidence unless the relevance is apparent, so that the court can determine whether the evidence is relevant and admissible.'"[35]  The proffer must "extend beyond the anticipated questions" that the complaining party intends to ask the witness and reveal, "with some degree of specificity, the substantive evidence [the complaining party] intended to present."[36]  "The purpose of the offer of proof is to show what the witness's testimony would have been—otherwise, there is nothing before the appellate court to show reversible error in the trial court's ruling."[37]

Here, Mims provided no "reasonably specific summary" of what Little's testimony would have been or how it was important to his case.  Accordingly, this Court cannot determine whether the district court abused its discretion or erred in excluding the testimony and, if so, whether Mims was harmed by the exclusion.[38]

We overrule Mims's fifth point of error.

---

[33] *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009); *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998); *see* Tex. R. Evid. 103(a)(2).

[34] *Mays*, 285 S.W.3d at 889.

[35] *Id*. at 889-90 (quoting *Warner*, 969 S.W.2d at 2).

[36] *Id*. at 890.

[37] *Bundy v. State*, 280 S.W.3d 425, 428-29 (Tex. App.—Fort Worth 2009, pet. ref'd) (citing *Stewart v. State*, 686 S.W.2d 118, 122 (Tex. Crim. App. 1984)).

[38] *See Mays*, 285 S.W.3d at 890-91; *Warner*, 969 S.W.2d at 1-2; *Watts v. State*, 371 S.W.3d 448, 463-64 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Rhoten v. State*, 299 S.W.3d 349, 355-56 (Tex. App.—Texarkana 2009, no pet.); *Bundy*, 280 S.W.3d at 429.

**CONCLUSION**

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed:   November 10, 2015

Do Not Publish