OWENS–ILLINOIS, INC., Fibreboard Cor-
poration, Pittsburgh–Corning Corpora-
tion, and Manville Corporation Asbestos
Disease Compensation Fund, Appellants,

v.

Horace CHATHAM, et al., Appellees.

No. B14–91–00539–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 13, 1995.*

Rehearing Overruled May 25, 1995.

* Motion for Rehearing Granted; Majority and Dissenting Opinions of March 16, 1995, Withdrawn, and substitute majority and dissenting opinions filed.

George T. Shipley, James H. Powers, Jack G. Carnegie, Houston, John Cummings, William B. Griffin, San Francisco, CA, R. Lyn Stevens, Beaumont, for appellants.

Richard N. Countiss, John E. Williams, Jr., Houston, for appellees.

Before SEARS, MURPHY and DRAUGHN, JJ.*

## OPINION ON MOTION FOR REHEARING

MURPHY, Justice.

Owens–Illinois, Inc. (O–I), Fibreboard Corporation (Fibreboard), Pittsburgh–Corning Corporation (P–C), and Manville Corporation Asbestos Disease Compensation Fund (Manville), collectively appellants (defendants in the trial court), appeal from judgments entered by the trial court following jury verdicts in favor of appellees (plaintiffs in the trial court). We affirm in part, and reverse and remand in part.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1990, the trial court, under TEX.R.CIV.P. 174(a), consolidated 289 asbestos personal injury suits that were filed from 1985 through 1989. Plaintiffs, workers at the Exxon Refinery in Baytown, Texas, brought the suits. They claimed that the defendants' products, allegedly present in the refinery at certain times during a seventy-year span, caused them to suffer injuries because the products contained asbestos. The case ultimately involved 289 direct plaintiffs and 298 derivative plaintiffs, such as spouses, heirs, and other family members, for a total of 587 claimants.[1]

---

* The Honorable Ross A. Sears and the Honorable Joe L. Draughn sitting by assignment.

1. O–I and Manville state in their briefs that there are 584 plaintiffs. P–C states that there are 571

Plaintiffs originally sought recovery from numerous defendants who allegedly manufactured asbestos containing products used in the Baytown refinery at certain periods in the seventy-year time frame; however, twenty of the defendants settled with the plaintiffs before trial, and plaintiffs proceeded to trial against five defendants.[2]

The consolidated trial began September 17, 1990, and the jury retired to deliberate on January 10, 1991. On January 29, 1991, the jury returned its verdicts.[3] The majority of the verdicts were for plaintiffs against either O–I, P–C, Fibreboard, Manville, or a combination thereof.[4] On May 6, 1991, the trial court entered its judgment based on the jury's verdicts. Appellants appeal from this judgment.

## MOTION TO REVERSE AND REMAND

On December 27, 1991, appellants filed "Appellants' Joint Motion to Reverse and Remand." Appellees responded to this motion and this court ordered the motion taken with the case. In the motion, appellants contend that three separate groups of documents, containing approximately 900 of the exhibits offered at trial, were lost or destroyed. Appellants thus contend this court must reverse and remand the case for a new trial under TEX.R.APP.P. 50(e).

As we have stated, this case was a consolidation of 289 separate lawsuits involving almost 600 direct and derivative plaintiffs. Of the 289 direct plaintiffs, fewer than twenty testified at trial; even fewer derivative plaintiffs testified. In lieu of direct testimony, the trial court allowed each side to use summaries during the consolidated trial. Appellants contend that three of the summaries were destroyed or lost and thus, they are prevented from presenting an adequate appeal. The

summaries that were allegedly lost or destroyed are: (1) a summary of plaintiffs' interrogatory answers offered by the defendants; (2) medical record summaries prepared by Dr. Gary Friedman, a witness for the plaintiffs; and (3) summaries of biographical and medical information for each direct plaintiff. Appellants argue that because one or more of these sets of documents was lost or destroyed, they cannot effectively show this court the errors involved and are entitled to a new trial. Texas Rule of Appellate Procedure 50(e) states:

> **Lost or Destroyed Record.** When the record or any portion thereof is lost or destroyed it may be substituted in the trial court and when so substituted the record may be prepared and transmitted to the appellate court as in other cases. If the appellant has made a timely request for a statement of facts, but the court reporter's notes and records have been lost or destroyed without appellant's fault, the appellant is entitled to a new trial unless the parties agree on a statement of facts.

TEX.R.APP.P. 50(e). We will discuss each set of documents separately.

## SUMMARY OF PLAINTIFFS' INTERROGATORY ANSWERS

 Appellants claim the summary of plaintiffs' interrogatory answers to certain interrogatories regarding product identification is missing. Appellants offered this summary for admission into evidence during trial. The trial court ruled that the summary of the interrogatory answers could be read to the jury; however, the court refused to admit the written summary into evidence and ruled that the jury could not inspect the document. Appellants contend that the re-

---

plaintiffs. However, the total number of plaintiffs listed on the verdict forms is 587.

2. The jury charge questioned the jurors about the liability of twenty-five defendants, including those who had settled. However, the jury assessed liability against only four of the five defendants who proceeded to trial. The jury determined that the fifth trial defendant, John Crane, Inc., and the settling defendants were not liable for any damages. Thus, only the four defendants found liable are involved in this appeal.

3. Because this case was a consolidation rather than a class action, the jury returned a separate verdict for each direct plaintiff. The derivative plaintiffs were listed on the direct plaintiffs' verdict forms. Therefore, the jury returned 289 verdicts.

4. According to the verdict forms, only sixteen direct plaintiffs and seventeen derivative plaintiffs were awarded zero damages by the jury.

fusal to admit the written summary is error, and that they are prevented from properly appealing this point because the document is missing. Appellants are incorrect. While the summary is not in the appellate record, it was not lost or destroyed as contemplated by rule 50(e).

During a post-verdict hearing on May 15, 1991, the trial court stated that the summary was not marked or put into the record during trial. Appellants agreed that there was no mention in the evidence log of the summary. To correct this deficiency, appellants attempted to present a formal bill of exceptions. Appellants offered the summary at this hearing in connection with their bill of exceptions. In response to this proffer, the trial court stated: "All right. That will be made part of this record." And indeed, the summary is in the record as an exhibit from the May 15, 1991, hearing. Thus, the summary is not "lost or destroyed" under TEX. R.APP.P. 50(e).

Appellants' real complaint is that the trial court did not sign the bill of exceptions. They contend that since the trial court did not sign the bill of exceptions, the summary is, for all practical purposes, missing. The argument is, essentially, that while the summary is in the record, it isn't *really* part of the record. Appellants are wrong. Contrary to appellants' contention, the trial court did not refuse to allow appellants to substitute a duplicate of the summary. In fact, as we stated above, the trial court specifically stated that the summary would be made part of the record. Therefore, while the trial court did not sign the formal bill of exceptions offered by appellants, it impliedly granted that portion of the bill pertaining to the summary, thereby allowing appellants to preserve any evidentiary complaint relating to the summary for appeal.[5] If appellants take issue with the procedures followed by the trial court regarding their bill of excep-

tions, there is nothing to prevent them from asserting that contention. Their complaint about the summary of the interrogatory answers is evidentiary in nature; it has nothing to do with a lost or destroyed record as intended in rule 50(e). The summary of plaintiffs' interrogatory answers cannot form the basis for a reversal under TEX.R.APP.P. 50(e).

### FRIEDMAN MEDICAL RECORD SUMMARIES

■ The second set of documents that appellants contend were lost or destroyed are approximately twenty-four medical summaries prepared by Dr. Gary Friedman, an expert witness for the plaintiffs. Dr. Friedman personally prepared summaries on a few of the plaintiffs and testified about the summaries during trial. We have reviewed the entire set of exhibits transmitted to this court and have determined that the Friedman medical summaries are not among the exhibits in the appellate record. Appellants contend that the exhibits were lost or destroyed and because of the loss or destruction, they are entitled to a new trial under TEX.R.APP.P. 50(e). Appellees have not agreed that these summaries were lost or destroyed.

We have reviewed numerous cases involving the loss or destruction of the statement of facts under rule 50(e). In almost every instance, there was some evidence in the record showing that the item or items in question were in fact lost or destroyed. *See Lewis v. State,* 844 S.W.2d 750, 752 (Tex. Crim.App.1993) (court reporter's affidavit); *Adams v. Transportation Ins. Co.,* 845 S.W.2d 323, 325, 327 (Tex.App.—Dallas 1992, no writ) (court reporters' testimony at hearing conducted by trial court supporting findings by trial court); *Mader v. State,* 807 S.W.2d 439, 440 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) (hearing conducted by

---

5. There was a second hearing on May 20, 1991, concerning the formal bill of exceptions. At that hearing, the court specifically refused to sign the bill presented by appellants. Along with other issues in the bill, appellants complained about the trial court's refusal to allow the written summary of plaintiffs' interrogatory answers into evidence. However, because the trial court specifically made the summary part of the record at the

May 15th hearing, it had already impliedly granted the portion of the bill relating to the court's trial ruling disallowing the admission of the written summary. This fact, coupled with the fact that the summary is in the record as an exhibit from the May 15th hearing, supports our holding that the summary is part of the record for appellate purposes.

trial court); *Hidalgo, Chambers & Co. v. FDIC*, 790 S.W.2d 700, 701 (Tex.App.—Waco 1990, writ denied) (parties agree original exhibits lost); *Darley v. Texas Uvatan, Inc.*, 754 S.W.2d 304, 305 (Tex.App.—Dallas 1988, no writ) (affidavit of appellant's counsel).[6]

Other than their absence from the appellate record, nothing suggests the Friedman summaries have been lost or destroyed: there are no affidavits or other statements from the court reporter or any of the clerks who handled the exhibits during this trial; there are no affidavits or other sworn statements from appellants or their counsel; there were no findings by the trial court regarding the whereabouts of these exhibits. Since the record contains no evidence supporting appellants' contention that the exhibits in question were lost or destroyed, it is possible the exhibits do exist and were simply not transmitted as requested. Appellants have not shown the Friedman summaries have been lost or destroyed within the purview of rule 50(e). Without the requirement that the complaining party provide some evidence of loss or destruction, every appellant who initially received an incomplete statement of facts could allege entitlement to a new trial. Rule 50(e) is not aimed at this situation. Without some sort of evidence in the record to show that the exhibits in question have actually been lost or destroyed, appellants are not entitled to a new trial under rule 50(e). *See Darley*, 754 S.W.2d at 306.

## MEDICAL AND BIOGRAPHICAL SUMMARIES

As we stated, the suits filed by appellees against the asbestos manufacturers were tried in a consolidated action. *See* Tex. R.Civ.P. 174(a). Because of time constraints and other procedures employed during the

trial, not every direct or derivative plaintiff testified. Only a small fraction of the plaintiffs testified from the witness stand. Those who actually testified presented evidence concerning themselves and testified about or identified co-workers, i.e., non-testifying plaintiffs.[7] Appellees called doctors to testify in general about the plaintiffs' medical conditions. In lieu of direct testimony from every plaintiff and detailed testimony from every doctor, appellees filed biographical and medical summaries. According to appellees, there was a biographical and medical summary for each direct plaintiff.

The biographical summaries contained the name, age, marital status, and the names of the children of each direct plaintiff. The biographical summaries also contained information regarding the years the plaintiff worked at the Exxon refinery, the jobs done by the plaintiff at the refinery, and the current employment status of the plaintiff. Where necessary, the summary also stated the plaintiff's date of death. The medical summaries characterized the medical records of various physicians who saw the plaintiffs. Actual medical records were not introduced. The biographical and medical summaries were the most detailed pieces of evidence that covered every plaintiff. As a result, these summaries were critical evidence in this consolidated action.

The summaries were not compiled, placed in notebooks, and then distributed to the jurors. Rather, the jurors were given empty notebooks and the summaries were introduced into evidence in blocks. The jurors placed the summaries into the notebooks as they were introduced. The jurors were responsible for their notebooks, were allowed to take notes on them, and otherwise do with them as they wished. After the verdict was

---

6. *See also Dunn v. State*, 733 S.W.2d 212, 215 (Tex.Crim.App.1987) (court reporter's sworn response to show cause order of Court of Criminal Appeals); *Martinez v. State*, 802 S.W.2d 105, 106 (Tex.App.—Amarillo 1990, no pet.) (court reporter's affidavit); *Batts v. State*, 673 S.W.2d 666, 667 (Tex.App.—San Antonio 1984, no pet.) (testimony in supplemental statement of facts filed by order of court of appeals showing original exhibits lost); *Walker v. State*, 642 S.W.2d 189, 191 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd) (hearing conducted by trial court); *Diaz v. Deav-*

ers, 574 S.W.2d 602, 607 (Tex.Civ.App.—Tyler 1978, writ dism'd w.o.j.) (parties agree original exhibits lost); *Rodriguez v. Standard Fire Ins. Co.*, 573 S.W.2d 594, 595 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.) (affidavits of trial court clerk and court reporter).

7. However, the record reflects that not every non-testifying plaintiff was specifically mentioned or identified by a testifying plaintiff.

received on January 29, 1991, a set of the notebooks was collected, verified, sealed in a box, and left with the court reporter. The notebooks used by the jurors during trial were either left in the jury room or taken home by the jurors. Those left in the jury room were destroyed.

Shortly before July 1, 1991, while the appellate record was being prepared, it was discovered that the sealed box containing the verified exhibits had disappeared. All parties agree that the box was lost or destroyed. On July 1, 1991, the trial court held a hearing at which the court instructed all counsel to search their records to see if they could locate the box. On July 8th, the trial court held a second hearing. At that hearing, the court stated that the box had not been located. The trial court then informed the parties that on July 2, 1991, it had retrieved two sets of notebooks containing the plaintiffs' biographical and medical summaries from two jurors who took the notebooks home with them. The trial court stated it had ascertained that one of the notebooks, the one belonging to juror Martha Brown, was an "exact duplicate original" of the missing plaintiffs' summaries. The court had reached this conclusion because it had its staff verify the notebooks by comparing them to the 289 verdict forms. Apparently, since the staff related to the court that there was a biographical and medical summary for each direct plaintiff, the trial court believed that Brown's notebooks were complete and accurate. The court stated that the other set of notebooks that were retrieved, those belonging to presiding juror Martha Delgadillo, were not complete, that they were "missing things," and thus, would not be used. The court also told the parties that it compared Brown's notebooks with the court's personal copy. The trial court admitted that its notebooks could not be used because they were incomplete. The trial court then stated that it was ordering Martha Brown's notebooks included as exhibits in the case. At this point, the purpose of the trial court's actions became clear: it was attempting to use TEX. R.APP.P. 50(e) to substitute the notebooks belonging to Brown for those that were lost or destroyed. The court gave the parties until August 5th to file objections.

The next hearing was on August 12th. At the beginning of the hearing, the trial court stated it had received written objections to the substitution from appellants. Another hearing was held on August 19th. At both of these hearings, appellants objected to the substitution procedure. All of the objections were overruled, and the Brown notebooks were transmitted to the appellate court as exhibits.

In their motion to reverse and remand, appellants contend the trial court was without authority to substitute Brown's notebooks for those that were lost or destroyed without their agreement; and in the alternative, even if the trial court could substitute copies of the exhibits without their agreement, the accuracy of the substituted documents is questionable and the substitution is therefore, inappropriate. In either case, appellants contend they are entitled to a new trial under TEX.R.APP.P. 50(e). We agree.

Appellees contend that the first sentence of rule 50(e) gives the trial court the authority to substitute copies for the lost exhibits without appellants' agreement. Appellees argue that the rule covers two distinct situations. They maintain that the first sentence of rule 50(e) gives the trial court unlimited authority to substitute "any portion" of a lost or destroyed record. The second sentence limits this authority only when the court reporter's notes and records have been lost or destroyed. Appellees agree that if the court reporter's notes and records have been lost or destroyed then agreement of the parties as to the statement of facts may be required "if the error cannot be corrected." In this case, appellees assert that the court reporter's notes and records are not missing. They argue that the lost exhibits are a "portion of the record," but not part of the court reporter's notes and records, and therefore the first sentence of rule 50(e) applies. Under their interpretation, the trial court has unlimited authority to order substitutions and no agreement by the parties is required.

Appellants take issue with this interpretation of the rule. Appellants assert that the second sentence of the rule applies. They contend that what was lost, i.e., exhibits, are

part of the court reporter's notes and records and therefore, their agreement is required for any substitution. Since they did not agree to the substitution of the documents for the lost exhibits, they did not agree on a statement of facts. Thus, they contend they are entitled to a new trial.

The first issue we must decide concerns the nature of exhibits. What part of the appellate record are exhibits? Are they part of the court reporter's notes and records?

■ Exhibits are part of the appellate record. *Durrough v. State*, 693 S.W.2d 404, 405 (Tex.Crim.App.1985); *Sheffield v. State*, 777 S.W.2d 743, 744 (Tex.App.—Beaumont 1989, no pet.). Texas Rule of Appellate Procedure 50(a) states that the record on appeal consists of a transcript and a statement of facts. TEX.R.APP.P. 50(a). Therefore, exhibits must either be part of the transcript or part of the statement of facts.

■ The statement of facts should include the testimony of the witnesses, either narratively or in question and answer form, and exhibits. *Insurance Co. of St. Louis v. Bellah*, 373 S.W.2d 691, 692 (Tex.Civ.App.—Fort Worth 1963, no writ). Exhibits are part of the evidence in a case and are, therefore, part of the statement of facts to be prepared by the court reporter upon request. *Adams*, 845 S.W.2d at 327; *see* TEX.GOV'T CODE ANN. § 52.047(a), (d) (Vernon 1988 & Vernon Supp.1993) (court reporter shall furnish transcript of evidence and may charge additional fee for reproduction of exhibits). Thus, exhibits are clearly part of the statement of facts.

■ Now that we have determined that exhibits are part of the statement of facts, the question remains whether they are part of the court reporter's notes and records.

In support of their contention that exhibits are not part of the court reporter's notes and records, appellees cite *Mader v. State*, 807 S.W.2d 439 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd) and *Mead v. State*, 759 S.W.2d 437 (Tex.App.—Fort Worth 1988), *rev'd on other grounds*, 819 S.W.2d 869 (Tex. Crim.App.1991). In *Mader*, appellant claimed he was entitled to a new trial because the trial court authorized an exhibit to

be substituted in the record and appellant had not agreed to the substitution. During the trial, the manager of the restaurant robbed by appellant testified. During his testimony, the manager drew a chalkboard diagram depicting the restaurant's floor area showing the position of the robbers and the witnesses during the robbery. The diagram was admitted into evidence as an exhibit for the state. *Id.* at 440. The prosecutor intended to have the diagrammed chalkboard photographed; however, before it could be done, the diagram was erased from the chalkboard. The court held a hearing on the matter and at the hearing, the restaurant manager produced a hand drawn diagram of restaurant floor area and testified that it was an exact replica of the one he had drawn during the trial. After the hearing, the trial court authorized the hand drawn diagram to be substituted in the record. Appellant objected and appealed. *Id.*

In holding that the substitution was appropriate, this court, citing *Mead v. State*, held that the material substituted was a "lost or destroyed portion of the record other than the statement of facts." *Id.* at 441.

Though we agree with the result reached by this court in *Mader*, we disapprove of the reasoning. First, this court's reliance on *Mead* was improper. The *Mead* case is inapplicable to the situation presented in *Mader* and the situation before us in this appeal. In *Mead*, appellant complained that the trial court erred in denying him access to the deceased's employment and medical records. *Mead*, 759 S.W.2d at 441. Appellant claimed the records were discoverable and that the trial court had improperly denied discovery. The records to which appellant was denied access were to have been sealed and forwarded to the court of appeals. The sealed records were lost.

Once the court of appeals learned that the discovery materials were lost, it abated the appeal and ordered the trial court to substitute in accordance with rule 50(e). *Id.* The trial court complied and forwarded the records. Appellant claimed that he did not agree to the substitution and was therefore, entitled to a new trial under the second

sentence of rule 50(e). The Fort Worth Court of Appeals disagreed. The court stated:

> We have before us a statement of facts, that being the court reporter's transcription of the trial proceedings. The material substituted was a lost or destroyed portion of the record other than the statement of facts. Rule 50(e) provides that such a lost record may be substituted in the trial court and says nothing about the appellant's approval being required.

*Id.* at 443. We agree with this holding. In *Mead,* the items lost or destroyed were documents that the trial court held were not discoverable by the appellant. They were documents tendered to the trial court in camera solely for the purpose of obtaining a ruling on their discoverability. They were never offered or admitted into evidence. The discovery materials never became exhibits. The documents were never part of the statement of facts, and thus, never became part of the court reporter's records. Because the court of appeals noted that the "material substituted was a lost or destroyed portion of the record other than the statement of facts," the original and substituted documents must have been included in a formal bill of exceptions. *Hidalgo,* 790 S.W.2d at 702. An informal bill of exceptions is included in the statement of facts, and a formal bill is part of the transcript. Tex. R.App.P. 52(b), (c)(11). Therefore, the Fort Worth court was correct in holding that the substitution was proper under the first sentence of rule 50(e). *See Hidalgo,* 790 S.W.2d at 702.

The situation in *Mead* was not the one we confronted in *Mader,* nor the one that confronts us in this appeal. The documents in *Mead* were not part of the statement of facts because they were discovery materials that were never part of the evidence in the case nor part of an informal bill of exceptions. Therefore, the documents were not part of the court reporter's records. In *Mader,* the lost or destroyed item was an exhibit, not sealed discovery material. Therefore, our reliance on *Mead* was misplaced. The situation in *Mead* was governed by the first sentence of rule 50(e) because the lost documents were never part of the court reporter's records. Any suggestion in *Mader* that exhibits are not part of the statement of facts or the court reporter's records is expressly disapproved.

Appellees argue that *Mader* and *Mead* stand for two propositions: (1) lost exhibits can be substituted by the trial court under the first sentence of rule 50(e); and (2) such exhibits are not part of the court reporter's notes and records under the second sentence of rule 50(e). They misinterpret these cases. First, *Mead* did not even involve exhibits. It involved a sealed box of documents that were ruled non-discoverable and not made part of the statement of facts. Second, nowhere in *Mead* did the court state that exhibits are not part of the court reporter's notes and records under the second part of rule 50(e). In *Mader,* while the case did hold that the trial court had the authority to substitute a new diagram for the one inadvertently erased from the chalkboard, and suggested that exhibits are not part of the statement of facts and therefore, not part of the court reporter's records, the case incorrectly relied on *Mead,* and further, is distinguishable in many respects from the situation involved in this appeal. Lastly, we find that the situation in *Mader* is unique so that the rule found in the second sentence of rule 50(e) does not apply.

The lost exhibit in *Mader* was a chalkboard drawing. No one could seriously contend the chalkboard was ever intended to be included on appeal. *See Mader,* 807 S.W.2d at 440–41. From the beginning it is clear that a reproduction of the drawing was the item intended to be included in the record. The reproduction was the exhibit that both parties believed would become part of the court reporter's records. It was simply an unfortunate series of events that kept this from occurring. Also, once the loss was noticed, the same witness that had drawn the original diagram reconstructed the drawing on a piece of paper and testified that it was exactly the same as the one he had drawn before. We do not see how this is any different from the prosecutor taking a photograph of the drawing. If the original chalkboard drawing had become part of the court

reporter's records, he or she would have had the duty of securing the exhibit. Obviously, it was not secured or otherwise taken care of by the court reporter. Any loss of the exhibit before it is reduced to its final form is governed by the first sentence of rule 50(e), and can be substituted by the trial court without the agreement of the appellant.

Beyond this, other distinguishing factors lead us to the conclusion that *Mader* does not support appellees' argument:

1. The opinion was specifically limited to the facts of the case. *Mader*, 807 S.W.2d at 440.

2. The substituted drawing was an accurate copy. Not once did the appellant question the accuracy of the substitution. The appellant was not faced with the "disastrous consequence" of appealing from an inaccurate statement of facts. *Id.* at 441 (citing *Hidalgo*, 790 S.W.2d at 702). In this case, appellants strongly argue there are numerous reasons, supported by the evidence, to question the accuracy of the substituted exhibits.

3. There was one exhibit lost in *Mader*. Here, two large notebooks containing hundreds of pages of documents were lost.

4. In *Mader*, the State (appellee) presented undisputed testimony of the person who made the drawing to prove that the substitute was the same as the original. In this case, appellees claim it is appellants' burden to prove the substitutions are inaccurate. Appellants respond that because so many exhibits are involved, no one can testify as to the accuracy of the substitutions.

5. The appellant in *Mader* never contended the lost exhibit was important to

any issue on appeal. He argued he was entitled to a new trial simply because there was a substitution. The appellants in the case before us raise legal and factual sufficiency points. They contend without the exhibits they will be deprived an adequate appellate review.

6. The *Mader* appellant requested "true and correct copies" of all exhibits. The record in this case reflects appellants requested that the original exhibits be included in the record.

■ When an exhibit must be reduced to another form for inclusion in the appellate record, it is not part of the court reporter's records until it reaches that final form. Such exhibits are governed by the first sentence of rule 50(e) until they actually become part of the court reporter's records. Since this was the situation in *Mader*, that case does not support the position appellees propose. The factual and procedural distinctions between *Mader* and the present case show that it does not support appellees' argument.[8]

That exhibits [9] are part of the court reporter's notes and records is further supported by the Texas Rules of Civil Procedure. TEX. R.CIV.P. 75a provides that the court reporter shall file with the court clerk all exhibits that were admitted in evidence or tendered on bill of exception during the course of any proceeding. TEX.R.CIV.P. 11, which lists the duties of court reporters, states that the court reporter is to file all exhibits with the clerk and prepare the official transcripts of all evidence. TEX.R.CIV.P. 11(a)(3), (4). These rules clearly place exhibits within the records of the court reporter. Further support for this proposition is found in *Diaz v. Deavers*, 574 S.W.2d 602 (Tex.Civ.App.—Tyler 1978, writ dism'd w.o.j.). In discussing the lost exhibits, the court of appeals stated:

8. We also believe that *Mader* has been implicitly overruled by the Texas Court of Criminal Appeals. In *Lewis v. State*, 844 S.W.2d 750 (Tex. Crim.App.1993), the court reporter lost portions of the voir dire examination. In reversing and remanding the case for a new trial, the Court of Criminal Appeals cited to rule 50(e) emphasizing that appellant is entitled to a new trial unless the parties agree on a statement of facts. *Id.* In a footnote to this statement, the court cited to *Hidalgo* stating that rule 50(e) had been applied

in civil cases, thereby implying that exhibits, like transcribed testimony, are part of the statement of facts and part of the court reporter's notes and records. *See Id.* at n. 5.

9. For the remainder of this opinion, a discussion of exhibits refers to those that are in the form in which they are to be included in the appellate record.

"... [T]he court reporter lost eight exhibits consisting of photographic slides depicting the injuries received by appellant as a result of the assault." *Id.* at 607. From this statement it is clear the court reporter is responsible for the exhibits and they are part of his or her records. Thus, appellees are incorrect in their argument that the lost exhibits in this case are a portion of the record other than the court reporter's notes and records. Exhibits are part of a court reporter's records.

In light of our holding that exhibits are part of the statement of facts, and therefore, part of a court reporter's records, we hold that *Hidalgo* controls the disposition of this appeal. In that case, the Waco Court of Appeals held that the trial court does not have authority to substitute documents for lost exhibits in a statement of facts without appellant's agreement.

In *Hidalgo,* all of the trial exhibits were lost. 790 S.W.2d at 701. The appellee, FDIC, tendered documents to the trial court as proposed substitutions for the lost exhibits. The trial court substituted these documents for the lost exhibits. The appellants filed a motion with the appellate court to reverse and remand the case for a new trial because they did not agree to a substitution of the documents. As in the case before us, the parties disagreed as to whether the first or second sentence of rule 50(e) governed. In its decision, the court of appeals determined that the second sentence of the rule controlled, and therefore, since Hidalgo did not agree to the substitution, the action taken by the trial court was improper. *Id.* at 702.

In reaching their conclusion, the court of appeals researched the origins of rule 50(e). We have done the same. The first sentence of rule 50(e) was derived almost verbatim from the last sentence of an article in the Texas Code of Criminal Procedure. *Id.; see* Act of May 31, 1965, 59th Leg., R.S., ch. 722, 1965 Tex.Gen.Laws 513–14, amended by Act of February 23, 1966, 60th Leg., R.S., ch. 659 § 31, 1966 Tex.Gen.Laws 1748, repealed by Act of September 4, 1986, 69th Leg., R.S. ch. 685 § 4, 1986 Tex.Gen.Laws 2472–73. The entire article, entitled "Effect of appeal," is concerned with the jurisdictional powers of the trial court once the appellate record has been filed. The article simply provides that the trial court still has jurisdiction to take certain specified actions even after the record has been filed. Act of May 31, 1965, 59th Leg., R.S.. ch. 722, 1965 Tex.Gen.Laws 513–14 (amended 1966) (repealed 1986). One of the actions the article allowed the trial court to take after its jurisdiction had expired was record substitution. The last sentence of the article gave the trial court extended jurisdiction to substitute lost or destroyed portions of the record after it had been filed with the Court of Criminal Appeals. Therefore, this article clearly concerned itself with jurisdiction, i.e. time frames. The purpose of the article was to allow the trial court to substitute lost or destroyed portions of the record after the appellate court had acquired jurisdiction. *Hidalgo,* 790 S.W.2d at 702 (citing *Navarro v. State,* 141 Tex.Crim. 196, 147 S.W.2d 1081, 1084 (1941) (on rehearing) (only action trial court can take after appellate court acquires jurisdiction is substitution of lost or destroyed records)). When the article was repealed and the last sentence was adopted as the first sentence of rule 50(e), its purpose did not change. The first sentence of rule 50(e) grants the trial court specific authority to perform an act (substitute the lost or destroyed record) after it loses jurisdiction. *Id.*

However, when rule 50(e) was adopted, a second sentence was added. This sentence was new; it was not derived from art. 44.11. The second sentence is unambiguous. It provides that an appellant is entitled to a new trial if: (1) he has made a timely request for a statement of facts; (2) the court reporter's notes and records have been lost or destroyed without appellant's fault; and (3) the parties cannot agree on a statement of facts. *Id.*; TEX.R.APP.P. 50(e).

■ A basic rule of the interpretation of rules and statutes is that they must be interpreted so as to harmonize and give effect, if possible, to all of their parts. *Martin v. Sheppard,* 129 Tex. 110, 102 S.W.2d 1036, 1039 (1937). If the conditions set out in the second part of the rule have been met and the trial court is still allowed to substitute

lost or destroyed portions of the record, then the second sentence is ineffective and useless. This result could not have been intended by the Texas Supreme Court and the Texas Court of Criminal Appeals. *See Hunter v. Fort Worth Capital Corp.,* 620 S.W.2d 547, 551 (Tex.1981) (enacting authority cannot be presumed to do a useless act). As we have stated, the first sentence gives the trial court power to substitute lost or destroyed portions of the record after it loses jurisdiction. The authority granted in the first sentence is limited by the language in the second sentence of the rule. *See Hidalgo,* 790 S.W.2d at 702. The power of the trial court to substitute lost or destroyed documents is limited as it relates to the statement of facts. The trial court is without authority to substitute documents that are part of the statement of facts unless the parties agree, if the appellant has made a proper request for the statement of facts and the court reporter's notes and records have been lost or destroyed. *Hidalgo,* 790 S.W.2d at 702. Nothing in the second part of rule 50(e) requires appellant to agree nor is there any requirement that appellant's disagreement be reasonable. *Id.*

■ The case before us falls directly into this analysis. It is undisputed that appellants made a timely request for a statement of facts; that the exhibits, which we have already ruled were part of the court reporter's records, were lost or destroyed without appellants' fault; and, that the parties have not agreed on a statement of facts. Therefore, under *Hidalgo,* appellants are entitled to a new trial.

It might be argued that such a rule removes any incentive for appellants to agree on a statement of facts and in fact, provides appellants with a windfall. *Id.* Such a result is certainly possible; however, considering that appellants were not responsible for the lost record, it cannot be said that the enacting bodies did not clearly intend to protect appellants from having to appeal on a statement of facts to which they did not agree. *Id.*

■ Appellees attempt to distinguish *Hidalgo* by arguing that some of the exhibits in *Hidalgo* could not be reconstructed, unlike the exhibits in this appeal. Thus, they contend, appellants are not faced with the "disastrous consequences of having to appeal on an incomplete or inaccurate statement of facts." They argue that if the exhibits can be reconstructed, appellants are not entitled to a new trial even if they do not agree to the substitution. *See Adams,* 845 S.W.2d at 327 (if reconstruction of original exhibits is possible, loss or destruction of exhibits is not reversible error). We disagree with this proposition. The meaning of rule 50(e) is clear: if the three pre-conditions are met, the appellant is entitled to a new trial. When the language in a rule is specific and its meaning is clear, the rule is entitled to a literal interpretation unless it would lead to absurdities and defeat the intent of the enacting body. *Hidalgo,* 790 S.W.2d at 702 (citing *Brazos River Auth. v. City of Graham,* 163 Tex. 167 354 S.W.2d 99, 109 (1961)). The results predicted by appellees cannot be considered absurd or violative of the enacting authorities' clear intent. Nothing is absurd about allowing an appellant a complete and unquestionably accurate record on appeal. The only way to accomplish this is to comply strictly with the language promulgated by the Texas Supreme Court and the Texas Court of Criminal Appeals and expressed in rule 50(e).

■ We hold that the trial court was without authority to substitute the lost or destroyed exhibits under TEX.R.APP.P. 50(e). It has been suggested that where only a portion of the record is lost, and efforts have been undertaken to reconstruct those missing portions, an appellate court should review the case and affirm it unless the appellant shows harm. *See Dunn v. State,* 733 S.W.2d 212, 216 (Tex.Crim.App.1987). The rule makes no provision for such an analysis. We hold that under the language in the rule, no harm analysis under TEX.R.APP.P. 81(b)(1) is required. The rule plainly states that appellants are entitled to a new trial.

■ Though we strongly stand by our interpretation of rule 50(e) and our holding in this case, we have also analyzed the evidence supporting the accuracy and completeness of the substituted documents. After an exhaus-

tive analysis, we hold appellants are entitled to a new trial even if our interpretation of the rule is incorrect.

The accuracy of the substituted exhibits is questionable at best. The notebooks were not assembled by appellees and then handed out to each juror. Rather, the jurors were given the empty binders and the summaries were handed out in groups over the course of the long trial. Each juror was expected to compile and keep up with his or her own notebook. The notebooks were for the jurors' personal use. They were allowed to write on them [10] and generally do with them as they wished. No one checked the notebooks to make sure they were being kept accurately.

Expecting a juror, keeping a notebook for his or her personal use, to accurately keep up with the hundreds of pages of exhibits distributed over a long period of time is unreasonable. The summaries were sometimes withdrawn and new summaries entered in their place. It is impossible to know if the jurors took out the old summaries and inserted the revised copies. Even the trial court admitted during one of the hearings held to discuss the lost exhibits that his personal copies of the notebooks were incomplete. If the trial court's notebooks were not accurately kept, how can it be said with any degree of confidence that the jurors kept their notebooks complete and accurate?

■ Appellees argue that appellants have offered no evidence to prove that the substituted copies were inaccurate. This is not their burden. Nothing in rule 50(e) requires an appellant to prove that a substitution is inaccurate before he is entitled to a new trial. Rather, the only case that even addresses the issue of proof of accuracy is *Mader*. In that case it was the appellee (the State) that offered proof as to the accuracy of the substituted exhibit. *Mader*, 807 S.W.2d at 440.

This is one of the great distinctions between *Mader* and this case. In *Mader*, the appellee proved, without contradiction, that the substituted document was accurate. That never occurred in this case.

Appellees note that the trial court, on the record, stated that the substituted documents were accurate duplicates of the lost exhibits. The trial court's only justification for this finding is that it had the clerks compare Brown's and Delgadillo's notebooks. Brown's notebooks contained more documents that Delgadillo's, so it was used. The clerks then compared Brown's notebook to the 289 verdict forms. Such a comparison only proves one thing: there is one summary for each plaintiff. It does not establish that the notebooks contained the correct version of the summary, that each summary contains all of its pages, or that the exhibit was admitted into evidence. More importantly, since Brown's notebook contained more documents that Delgadillo's, it is clear that at least one juror did not accurately keep up with the exhibits.

Also, the notebooks were out of the court's custody from the end of January until the second of July. For five months the trial court had no control over the notebooks. In one of the hearings it was learned that Delgadillo took documents out of her notebooks and placed them in others for ease in handling during the trial. Thus, when she returned the documents at the court's request, they were not all in the original notebooks. Did Brown ever do the same thing? Once she left the courthouse with those notebooks, was everything kept intact? Did any of the documents contained in these two huge notebooks simply fall out? Were the documents secure? Could they have been tampered with by someone besides Brown without her knowledge? [11] It is difficult, if not impossible, to find such documents trustworthy. To

---

10. Brown's notebooks, used by the trial court as substitutes for the lost notebooks, contain extensive notes, comments, and doodling. None of this was excised before the notebooks were sent to this court.

11. Brown executed an affidavit stating, in effect, that the documents were complete and in the same condition as when she received them during the trial, and that no one had tampered with them. She does not, and in fact, could not swear that her notebooks were identical to those that were lost. While we do not doubt that Brown believes she kept her notebook accurately, we do not believe that appellants should have to rely on that belief alone.

force appellants to prosecute an appeal with such documents is unfair.

Without the original documents with which to compare there is no way to prove that the substituted notebooks are accurate. The trial court asked appellants to point out specific documents in the Brown notebooks that they felt were inaccurate. Appellants stated they were unable to do so because they could not compare Brown's notebooks to those in the sealed box because the box was lost or destroyed. Appellees argue that appellants could have put employees for counsel on the stand to point out any inaccuracies. In turn, appellees could have put their employees on the stand to prove the exhibits were accurate. Why didn't they? For the simple reason that such an attempt would have been futile. These notebooks are comprised of hundreds of pages of documents. There is simply no way, without the originals for comparison, to testify that any one document is accurate or inaccurate. As stated by appellants, "It would be like asking someone to read *War and Peace* and, months later, showing the individual several retyped pages from the middle of the book and asking them to determine whether there were any changes on any of the pages."

In their response to appellants' joint motion to reverse and remand, appellees stated: "During the trial, each side introduced medical summaries **of each Refinery Worker** and the Workers also introduced biographical summaries." (emphasis supplied) Thus, appellees admit that there should be one medical summary and one biographical summary for each direct plaintiff. The trial court had its clerks compare the substituted notebooks to the verdict forms and was told that there was a medical and biographical summary for each plaintiff. This is what convinced the court the substituted notebooks were exact duplicates of the lost notebooks. We have gone through Brown's notebooks repeatedly, and searched all of the boxes transmitted to this court on appeal. Brown's notebook, the one the trial court substituted as an exact duplicate, is missing documents. There are no medical summaries in the notebooks for Charles C. Amyett or Richard Olachia, Sr. We have been unable to find medical sum-

maries for these two plaintiffs anywhere in the record. Though these were the only two documents we were able to determine positively were missing, this omission calls into question the entirety of the substituted evidence.

In this appeal, appellants have raised no evidence, insufficient evidence, and great-weight-and preponderance points of error. The law in this state is clear: if there is a complaint about the legal or factual insufficiency of the evidence, this burden cannot be discharged in the absence of a complete or an agreed statement of facts. *Englander Co. v. Kennedy,* 428 S.W.2d 806, 806 (Tex.1968) *(per curiam); Waller v. O'Rear,* 472 S.W.2d 789, 791 (Tex.Civ.App.—Waco 1971, writ ref'd n.r.e.). An appellant cannot challenge the factual sufficiency of the evidence to support a finding without bringing forth a complete statement of facts. *Rowlett v. Colortek, Inc.,* 741 S.W.2d 206, 207–08 (Tex.App.—Dallas 1987, writ denied). "Great-weight-and-preponderance" points require an appellate court to consider the entire record, and therefore, all of the exhibits are material to such points. *Id.* When exhibits are lost or destroyed and cannot be suitably replaced, an appellant is patently prevented from making a proper presentation of sufficiency points of error. *Adams,* 845 S.W.2d at 326. Reversal is required when an appellant, wishing to complain of no evidence or insufficient evidence to support a finding, is deprived of a portion of the statement of facts. *Id.* at 327. Further, such a reversal is required irrespective of harm or any allegation of harm. *Dunn v. State,* 733 S.W.2d 212, 216 (Tex. Crim.App.1987); *Sheffield,* 777 S.W.2d at 744. Even if we conducted a harm analysis under Tex.R.App.P. 81(b)(1), the case would be reversible. Rule 81(b)(1) states that appellants are not entitled to a reversal on appeal unless they are prevented from making a proper presentation of the case to the appellate court. Tex.R.App.P. 81(b)(1). Without a statement of facts, appellants cannot properly present their insufficiency and great weight points.

We have discussed how questionable the accuracy of the substituted documents is. This alone would lead us to the finding that

appellants do not have a proper record to prosecute this appeal; however, with at least two documents missing, the record is not only inaccurate, it is incomplete. Appellants, like the appellant in *Hidalgo*, are faced with the disastrous consequence of having to appeal on an incomplete and inaccurate record. Thus, even if our decision regarding the application of rule 50(e) is wrong, appellants are entitled to a reversal of this cause for a new trial.

■ There has been some suggestion from appellees that we are not required to remand the entire case, that we could perhaps weed through the evidence and determine whether certain appellees have sufficient evidence to affirm their judgments without the documents in the notebooks. This is incorrect. Appellants are entitled to a complete record. Without a complete statement of facts, we cannot adequately review this appeal. To do so would deny appellants their right to a fair review. Also, it would be unfair to appellants to sever out individual plaintiffs' claims. Because this case was tried as a consolidation and the evidence was submitted in many instances by summary, the claims are so interwoven that any severance would be unjust. *See State Dept. of Highways v. Cotner*, 845 S.W.2d 818, 819 (Tex.1993) (construing Tex.R.Civ.P. 41).

We are the first to concede that reversal and remand is a harsh result especially since neither party was at fault. However, the integrity of the system dictates that appellate records meet minimum requirements, one of which is an accurate and complete statement of facts when one is requested.

Because we have determined that appellants are entitled to a new trial based on the lost exhibits, it is unnecessary, and would be inappropriate, to consider their points of error. Appellants' Joint Motion to Reverse and Remand is granted. This case is reversed and we order that it be remanded to the trial court for a new trial.

■ We note here that the trial court rendered several take-nothing judgments in favor of some or all of the appellants. None of the appellants, of course, sought reversals of these favorable judgments. Three direct plaintiffs and five derivative plaintiffs, however, perfected an appeal claiming the take-nothing judgments rendered against them were in error. Only those eight plaintiffs raised any points of error complaining about the trial court's judgment. Properly assigned error is a predicate for an appellate court to reverse a trial court's judgment. *Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990) (*per curiam*). Grounds of error not raised by points of error or argument are waived. *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209 (Tex.1990) (*per curiam*). Therefore, the judgments rendered in favor of appellants as to the plaintiffs that did not perfect an appeal are undisturbed by our opinion in this case.[12]

■ Three plaintiffs, George Cunningham, John C. Mullins, and Arthur W. Schneider, were barred from recovery based on statute of limitations. Five derivative plaintiffs were denied recovery on the same basis. The appellants did not appeal the judgments rendered as to these plaintiffs; however, Cunningham, Mullins, Schneider, and their derivative plaintiffs have appealed the judgments rendered against them. In their point of error, they claim there is no evidence or insufficient evidence to support the statute of limitation findings against them.

In response to question K, the jury found facts supporting a limitations defense against Cunningham, Mullins, and Schneider. The jury found that Cunningham knew or should have known he had an asbestos related disease on or before December 28, 1987; Mullins knew or should have known on or before December 19, 1987; and Schneider knew or should have known on or before June 21, 1986. These plaintiffs contend that appellants failed to carry the burden of proof to show when the causes of action accrued.

■ These cases are governed by the two year statute of limitations. Tex.Civ.Prac. &

---

**12.** It is unnecessary to list these plaintiffs by name. The judgment of the trial court involving these plaintiffs speaks for itself.

REM.CODE ANN. § 16.003 (Vernon 1986). The statute of limitations is an affirmative defense and therefore, in this case, the appellants had the burden of pleading and proving it. *See Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988); TEX.R.CIV.P. 94. However, when the discovery rule is pled, as it was in this case, the burden shifts. *See Woods,* 769 S.W.2d at 518.

The discovery rule is a plea in confession and avoidance. *Id.* at 517. The rule is used to avoid the application of the statute of limitations. *See id.* The rule defers commencement of the limitation period until the date on which the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury. *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988). When the discovery rule applies, the party seeking to benefit from the discovery rule must bear the burden of proving and securing favorable findings thereon. *Id.* (citing *Weaver v. Witt,* 561 S.W.2d 792, 794 n. 2 (Tex.1977); *Wise v. Anderson,* 163 Tex. 608, 359 S.W.2d 876 (1962); *National Resort Communities v. Short,* 712 S.W.2d 200, 201–02 (Tex.App.—Austin 1986, writ ref'd n.r.e.)). The party asserting the discovery rule should bear the burden because it generally has greater access to the facts necessary to establish that it fall within the rule. *Woods,* 769 S.W.2d at 518.

Therefore, here, it was the burden of Cunningham, Mullins, and Schneider to plead and prove when they knew or should have known that they had asbestos related diseases. They admit in their brief that there is no evidence to support the finding. Because they did not prove their entitlement to the discovery rule, there is no basis for reversal. It was not the burden of the appellants to prove it. *See id.* The cross-point raised by Cunningham, Mullins, and Schneider is overruled and the take-nothing judgment rendered in favor of the appellants is affirmed.

The unappealed and unchallenged take-nothing judgments in favor of some or all of the appellants are undisturbed by our decision in this opinion. The take-nothing judgments against Cunningham, Mullins, Schneider, and their derivative plaintiffs are affirmed. As discussed in this opinion, the remainder of the trial court's judgment is reversed and remanded for a new trial.

SEARS, Justice, dissenting.

I again respectfully dissent from my brethren.